IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Daniel E. Brannen,<br><br>      Plaintiff,<br><br>v.<br><br>British Airways Plc and Viking River Cruises Inc.,<br><br>      Defendants. | **Complaint-Civil**<br><br>Docket No. _____ |

Comes now the Plaintiff, Daniel E. Brannen, by and through his attorney, Daniel E. Brannen Jr., Brannen Law LLC, and makes the following allegations in support of this Complaint.

**Introduction**

1. Plaintiff Daniel E. Brannen brings this Complaint pursuant to the Convention for the Unification of Certain Rules for International Carriage by Air, November 4, 2003, U.S. et al., herein called the Montreal Convention.

2. The United States of America ratified the Montreal Convention on 4 November 2003, and so is a State Party thereunder.

1

3. The United Kingdom of Great Britain and Northern Ireland ratified the Montreal Convention on 28 June 2004, and so is a State Party thereunder.

4. Belgium ratified the Montreal Convention on 28 June 2004, and so is a State Party thereunder.

**Parties**

5. Plaintiff Daniel E. Brannen is a natural person.

6. Mr. Brannen is a resident and citizen of the Commonwealth of Pennsylvania, and of the United States of America.

7. At both the filing of this Complaint and at the time of the accident that is the subject of this Complaint, Mr. Brannen's principal and permanent residence was in Centre Hall PA 16828, United States of America.

8. Defendant British Airways Plc (herein called British Airways) is an air carrier whose registered address is Waterside, PO Box 365, Harmondsworth, UB7 0GB, and whose registered agent is CT Corporation Systems, 116 Pine Street, #320, Harrisburg PA 17101.

9. British Airways is a carrier that operates services for the carriage of passengers by air, to and/or from the United States of America, either on its own aircraft and/or on another carrier's aircraft pursuant to a commercial agreement.

10. British Airways is a carrier that, in the United States of America, conducts its business of carriage of passengers by air from premises leased or owned by the carrier itself or by another carrier with which it has a commercial agreement.

11. Defendant Viking River Cruises, Inc. (herein called Viking) is a sales agent for river cruises and associated air travel in Europe, with U.S. headquarters at 5700 Canoga Avenue, Suite 200, Woodland Hills CA 91367, and whose registered agent is CT Corporation Systems, 116 Pine Street, #320, Harrisburg PA 17101.

12. Viking is a contracting carrier which, as a principal, makes contracts of carriage governed by the Montreal Convention with passengers or consignors or with persons acting on behalf of passengers or consignors.

13. Brussels Airlines SA/NV (herein called "Brussels Airlines") is an air carrier that operates services for the carriage of passengers by air, to and/or from the United States of America, either on its own aircraft and/or on another carrier's aircraft pursuant to a commercial agreement.

14. Brussels Airlines is a carrier that, in the United States of America, conducts its business of carriage of passengers by air from premises leased or owned by the carrier itself or by another carrier with which it has a commercial agreement.

**Jurisdiction**

15. This is a civil case arising under a treaty of the United States.

16. This Court has jurisdiction over this case pursuant to U.S. CONST., Art. III, § 2, 28 U.S.C. § 1331, and the Montreal Convention, Articles 33 and/or 46.

**Venue**

17. This judicial district is a proper venue for this civil case pursuant to 28 U.S.C. § 1391(b), and/or pursuant to Article 33, section 2 of the Montreal Convention.

**Other Factual Allegations**

18. On or about 24 September 2014, Mr. Brannen and his wife Claire A. Brannen made reservations with Viking for "Viking Portraits of Southern France," on 1 November 2015, on the cruise ship Viking Buri, reservation number 2368237.

19. Viking arranged for air travel by Mr. and Mrs. Brannen from Newark, New Jersey, United States of America, to Marseilles, France, on British Airways flight 188 departing from EWR 31 October 2015 to LHR, arriving 1 November 2015, connecting on British Airways flight 368 from LHR to MRS, arriving 1 November 2015.

20. On 31 October 2015, Mr. and Mr. Brannen traveled on British Airways flight 188 from Newark International Airport in Newark, New Jersey, United States of America to Heathrow Airport, United Kingdom, arriving at Heathrow Airport, terminal 5, on 1 November 2015, around 9:05 a.m.

21. Mr. and Mrs. Brannen immediately disembarked from terminal 5 to terminal 3 to embark on their scheduled connecting flight to Marseilles, France. At terminal 3, a British Airways agent told Mr. and Mrs. Brannen that their British Airways connecting flight was canceled. The British Airways agent instead arranged

4

for Mr. and Mrs. Brannen to travel to Brussels, Belgium, on Brussels Airlines, SN flight 2096, and then on SN 3603 from Brussels to Marseilles, all on 1 November 2015.

22. The British Airways agent gave Mr. and Mrs. Brannen an e-ticket receipt for flights 2096 and 3603, and specifically instructed Mr. and Mrs. Brannen immediately to travel from terminal 3 to terminal 4, using the airport's inter-terminal transfer bus system, to get their boarding passes and embark on Brussels Airlines, SN flight 2096.

23. Mr. and Mrs. Brannen followed the British Airway agent's instructions, for the immediate purpose of embarking on Brussels Airlines, SN flight 2096.

24. At the transfer bus stop at terminal 3, the bus stopped too far from the curb. Passengers began boarding by stepping directly from the curb onto the bus, which required a long step. Plaintiff estimates that the bus was approximately 20-22 inches from the curb.

25. Mrs. Brannen boarded the bus following some of these passengers, immediately before Mr. Brannen.

26. Mr. Brannen is an elderly man with arthritis in his right foot. The condition makes it useful for Mr. Brannen to walk with a cane, especially when traveling in locations with which he is unfamiliar. Mr. Brannen was using his cane when he tried to board the bus that day.

27. Because the bus stopped too far from the curb, Mr. Brannen stepped forward with his good, left foot, but the foot slipped off the bus as he tried to board, causing him to hit his left shin on the bus ledge, which then caused him to fall backward.

28. People behind Mr. Brannen helped him get up from the fall.

29. After they arrived at terminal 4, Mr. and Mrs. Brannen went to the Brussels Airlines counter to get their boarding pass and to continue embarking, at which point a Brussels Airlines representative informed them that this flight was canceled too.

30. Mr. and Mrs. Brannen returned to terminal 3 to the British Airways transfer desk, to get new flight instructions, and were told they could not get a flight until the following day.

31. That evening at a hotel at the airport, Mr. Brannen discovered a large bruise and hematoma on his left shin.

32. At the airport the next morning, 2 November 2015, Mr. Brannen reported the injury to security, and spoke with Vicki Munns, Passenger Experience Manager.

33. Ms. Munns asked, "Didn't the bus stop close to the curb?"

34. Mr. Brannen replied that the bus did not stop close to the curb.

35. Back home in the United States after the vacation, Mr. Brannen had a previously set appointment on 10 November 2015 with a podiatrist, Dr. Jolene Moyer, to have toenails trimmed.

36. At that appointment on 10 November 2015, Dr. Moyer was concerned by the hematoma, and so sent Mr. Brannen to the hospital immediately for an ultrasound to check for blood clots, which ultrasound showed no blood clots. Dr. Moyer also recommended that Mr. Brannen see his primary care doctor for the injury.

37. That same day, 10 November 2015, Mr. Brannen's primary care physician, Dr. Paul Guillard, diagnosed cellulitis and a serious infection in the injured left leg.

38. Mr. Brannen underwent treatment for his injury from 10 November 2016 through 22 February 2016 at both Dr. Guillard's office and at a wound clinic at the Mount Nittany Medical Center. Treatment involved three rounds of antibiotics for bacteria. Treatment also involved daily use of a KCI VAC pump, 24 hours daily, from 3–7 December 2015, 9–21 December 2015, and 28 December 2015–11 January 2016. His total medical expenses were about USD $22,768.97.

39. Mr. Brannen, who works as a substitute teacher, was unable to work due to his injury from November 2015 through February 2016, resulting in lost wages of USD $5,510.00.

40. Mr. Brannen's injury caused him substantial pain and suffering from 1 November 2015 through summer 2016, and permanent disfiguration. Mr. Brannen

reserves the right to prove the financial value of his pain and suffering and disfiguration at trial.

### Count I-Strict Liability against Viking

41. Mr. Brannen repeats and incorporates herein the allegations in paragraphs 1–40 of this Complaint.

42. Mr. Brannen suffered damage resulting from injury of him as a passenger in the course of an international carriage of persons for reward between the United States of America and the United Kingdom and Belgium, all of which are State Parties under the Montreal Convention.

43. For the sake of the carriage in the course of which Mr. Brannen was injured on 1 November 2015, Viking was a contracting carrier under Articles 39 and 40 of the Montreal Convention.

44. The accident that caused Mr. Brannen's injury took place in the course of the operations of his disembarking from British Airways flight 188.

45. The accident that caused Mr. Brannen's injury took place in the course of the operations of his embarking on Brussels Airlines flight 2096.

46. Mr. Brannen sustained damages for bodily injury that was the factual and proximate result of the accident on 1 November 2015.

47. Viking is strictly liable to Mr. Brannen for damages he sustained for bodily injury up to 100,000 Special Drawing Rights, as revised.

48. As a contracting carrier, Viking is mutually liable for the acts and omissions of actual and/or contracting carrier British Airways, of actual and/or successive carrier Brussels Airlines, and of their servants or agents, including the bus system on which Mr. Brannen was injured.

49. Mr. Brannen seeks to recover his damages from Viking, not exceeding 100,000 Special Drawing Rights, as revised.

**Count II-Strict Liability against British Airways**

50. Mr. Brannen repeats and incorporates herein the allegations in paragraphs 1–49 of this Complaint.

51. Mr. Brannen suffered damage resulting from injury of him as a passenger in the course of an international carriage of persons for reward between the United States of America and the United Kingdom and Belgium, all of which are State Parties under the Montreal Convention.

52. For the sake of the carriage in the course of which Mr. Brannen was injured on 1 November 2015, British Airways was an actual carrier, and/or was a contracting carrier, under Articles 39 and 40 of the Montreal Convention.

53. The accident that caused Mr. Brannen's injury took place in the course of the operations of his disembarking from British Airways flight 188.

54. The accident that caused Mr. Brannen's injury took place in the course of the operations of his embarking on Brussels Airlines flight 2096.

55. Mr. Brannen sustained damages for bodily injury that was the direct and proximate result of the accident on 1 November 2015.

56. As an actual carrier, British Airways is strictly liable to Mr. Brannen for damages he sustained for bodily injury up to 100,000 Special Drawing Rights, as revised.

57. As a contracting carrier, British Airways is mutually liable for the acts and omissions of actual and/or successive carrier Brussels Airlines, and of their servants or agents, including the bus system on which Mr. Brannen was injured.

58. Mr. Brannen seeks to recover his damages from British Airways, not exceeding 100,000 Special Drawing Rights, as revised.

WHEREFORE,

Plaintiff demands a jury trial on all issues so triable, and requests judgment in his favor against each and both Defendants, and asks the Court to award damages, fees and costs as allowed, and other relief the Court deems just and proper.

Respectfully submitted:

_____

Daniel E. Brannen Jr., PA 83717
Brannen Law LLC
3 Caliente Road, #5
Santa Fe NM 87508
505.466.3830
dbrannen@brannenlawllc.com

Attorney for Plaintiff, Daniel E. Brannen