### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DANIEL E. BRANNEN,

      Plaintiff,

          v.

BRITISH AIRWAYS PLC AND
VIKING RIVER CRUISES INC.,

      Defendants.

:   CIVIL ACTION

:

:   NO.: 4:17-cv-00714

:

:   Honorable Judge Yvette Kane

:

:   **ELECTRONICALLY FILED**

:

:

:

:

:

:

:

:

### MEMORANDUM OF LAW IN SUPPORT OF
### BRITISH AIRWAYS PLC'S MOTION TO DISMISS THE COMPLAINT

British Airways Plc ("British Airways") respectfully submits this motion to dismiss Plaintiff's complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff Daniel E. Brannen incorrectly alleges a cause of action under the Montreal Convention[1] arising from his boarding of an airport

---

[1] *See*, the Convention for the Unification of Certain Rules Relating to International Transportation by Air, concluded at Montreal, Canada on May 18, 1999, reprinted in S. Treaty Doc. 106-45, CCH Av. L. Rep ¶ 27,400-59, 1999 WL 33292734 (1999), attached as Ex. "A".

shuttle bus[2] at London Heathrow Airport ("LHR Airport") in London, England (the "Incident"). The Montreal Convention is inapplicable because Mr. Brannen was not in the course of either embarking or disembarking an international flight at the time of the incident, and instead, was in a public place transiting between different airport terminals while attempting to secure transportation to Marseille, France. Because Plaintiff only alleges a cause of action under the Montreal Convention, which does not apply in this case, Plaintiff's Complaint against British Airways should be dismissed with prejudice.

## STATEMENT OF FACTS

Plaintiff's alleged damages occurred during a layover at LHR Airport on November 1, 2015. According to the Complaint, Plaintiff and his wife were confirmed passengers on British Airways flights from Newark International Airport ("EWR Airport") in Newark, New Jersey to Marseille, France ("MRS") with a stopping place at London Heathrow Airport ("LHR Airport").[3] *See* Compl. at ¶ 19. On October 31, 2015, Plaintiff and his wife traveled on British Airways Flight BA 188 from EWR Airport to LHR Airport and arrived at Terminal 5 at LHR Airport the following day on November 1, 2015. *Id.* at ¶ 20. Upon arrival at

---

[2] British Airways does not own, operate, control or maintain the airport shuttle bus.
[3] Plaintiff claims that the British Airways flights were arranged through co-defendant Viking River Cruises Inc. on or about September 24, 2015. *See* Compl. at. ¶ 19.

LHR Airport, Plaintiffs went from Terminal 5 to Terminal 3 to check-in for their flight to Marseille. *See id.* at ¶ 21. At Terminal 3, Plaintiff proceeded to the British Airways check-in counter where he was informed that the flight to MRS Airport (British Airways Flight BA 368) had been cancelled.[4] *See id.* at ¶ 21. The British Airways agent at the check-in counter re-booked Plaintiff and his wife on another flight with Brussels Airlines, Flight SN 2096,[5] which was scheduled to leave from Terminal 4. *Id.* Plaintiff claims that the British Airways agent instructed him to take a shuttle bus from Terminal 3 to Terminal 4. *See id.* at ¶ 22.

Plaintiff exited Terminal 3 and waited for the shuttle bus that would take him to Terminal 4. *See id.* at ¶¶ 23-24. When the shuttle bus arrived at the stop, Plaintiff observed that the bus has parked approximately 20-22 inches from the curb. *See id.* at ¶¶ 24-26. Plaintiff, who has arthritis and uses a cane to ambulate, claims that, because the bus stopped too far from the curb, he had to step forward with his "good foot" to board the bus. *Id.* When he stepped forward, Plaintiff hit

---

[4] On November 1, 2015, there were severe storms in the London area, which resulted in the delay and cancellation of hundreds of flights, including BA Flight No. 368. *See* Weather Underground, Weather History for EGLL [LHR Airport] – November 2015, https://www.wunderground.com/history/airport/EGLL/2015/11/1/DailyHistory.html?req_city=& req_state=&req_statename=&reqdb.zip=&reqdb.magic=&reqdb.wmo=&MR=1 (showing extreme fog conditions persisted at LHR Airport on the date of the Incident), attached as Ex. "B".

[5] Plaintiff claims that he was rescheduled on Brussel Airlines flight SN 2096 to Brussels, Belgium where he would connect to Brussel Airlines Flight SN 3603 to Marseille, France. *See* Compl. at ¶ 21.

his left shin on the steps of the bus and fell backwards. *See id.* at ¶ 27. Plaintiff does not allege that he felt any pain or sustained any visible injuries from the fall. Instead, Plaintiff continued to Terminal 4 to obtain his boarding pass for flight SN 2096. *See id.* at ¶ 29. At Terminal 4, Plaintiff was informed that the Brussel Airlines flight was also cancelled. *Id.* Plaintiff returned to Terminal 3, and requested re-booking from British Airways. *See id.* at ¶ 30. Plaintiff and his wife were re-booked on a British Airways flight to Marseille on the following day. *Id.*

Plaintiff alleges that he did not discover the injury to his left shin until the evening of November 1, 2015 while he was at the hotel airport. *See id.* at ¶ 31. The next day, Plaintiff claims that he reported the injury to a Passenger Experience Manager, Vicki Munns. *Id.* at ¶¶ 32-33. Plaintiff further claims that he never sought medical attention for the injury to his left shin, but rather the injury was inspected approximately nine (9) days later when Plaintiff was at a podiatrist appointment for an unrelated issue. *See id.* at ¶¶ 35-36. After Plaintiff's podiatrist appointment, he was diagnosed with cellulitis and a severe infection. *See id.* at ¶ 37.

## PROCEDURAL HISTORY

On April 21, 2017, Plaintiff commenced this claim in the United States District Court for the Middle District of Pennsylvania seeking damages for injuries

he allegedly sustained to his left shin.  British Airways was formally served with a

copy of the Summons and Complaint on May 3, 2017.  British Airways now files

this motion to dismiss Plaintiff's Complaint for failure to state a claim under the

Montreal Convention.

## STATEMENT OF QUESTIONS INVOLVED

This motion concerns whether the Montreal Convention governs Plaintiff's

claims.

## LEGAL STANDARD

In considering a motion to dismiss, the Third Circuit has set forth a three-

prong analysis that a district court must conduct when determining whether a

complaint has alleged sufficient facts to survive dismissal.  *See Benner v. Bank of*

*America, NA*, 917 F. Supp. 2d 338, 350 (E.D. Pa. 2013).  "First, the court must

'tak[e] note of the elements a plaintiff must plead to state a claim.'" *See Santiago*

*v. Warminster Twp.,* 629 F.3d 121, 130 (3d Cir.2010) (quoting *Aschcroft v. Iqbal,*

556 U.S. 662 (2009)). "Second, the court should identify allegations that, 'because

they are no more than conclusions, are not entitled to the assumption of truth' [and

f]inally, 'where there are well-pleaded factual allegations, a court should assume

their veracity and then determine whether they plausibly give rise to an entitlement

for relief.'" *Id.*  If the complaint does not allege "enough facts to state a claim to

relief that is plausible on its face" then dismissal under 12(b)(6) is appropriate. *See*

*Mesta v. RBS CITIZENS NA*, No. 14-cv-703, 2014 WL 7272270, at * 2 (W.D. Pa.

Dec. 18, 2014) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 556 (2007);

*Aschcroft*, 556 U.S. at 678 (2009)), attached as Ex. "C".

## ARGUMENT

Article 17 of the Montreal Convention governs an airline's liability for

claims arising from injury to passengers during the operations of embarking,

disembarking or on board an international flight.   *See* Art. 17 of the Montreal

Convention attached as Ex. "A".  In order to state a cause of action for injury under

the Montreal Convention, "three conditions [must be] met: a passenger suffers (1)

bodily injury in (2) an accident that occurred while (3) on board, embarking, or

disembarking." *Terrafranca v. Virgin Atlantic Airways, Ltd.*, 151 F. 3d 108, 100

(3d. Cir. 1998); *see also Plonka v. U.S. Airways*, No. 13-v-7560, 2015 WL

6467917, at *2 (Oct. 27, 2015) attached as Ex. "D".

Plaintiff states one cause of action, strict liability under the Montreal

Convention, which he alleges governs his claim because he sustained injuries

while "disembarking from British Airways flight 188 [ . . .  and] embarking on

Brussels Airlines flight 2096." Compl. at ¶¶ 53-54.  Specifically, Plaintiff defines

embarking and disembarking as traversing the airport from different terminals

between flights. *See, e.g.,* Compl. at ¶ 53 (Plaintiff claiming that the injury occurred while he was "disembarking from British Airways flight 188"); *see also* Compl. at ¶ 54 (Plaintiff also claiming that he was injured as he was "embarking on Brussels Airlines flight 2096"). However, traversing between terminals at an airport does not constitute embarking or disembarking for the purposes of liability under Article 17 of the Montreal Convention.

In determining what constitutes the operations of embarking or disembarking, the Third Circuit has held that there must be a close connection between boarding (or deplaning) the aircraft and the time and place where the injury occurred. *See, e.g., Evangelinos v. Transworld Airlines, Inc.,* 550 F.2d 152, 155 (3d. Cir. 1977); *see also Kantonides v. KLM Royal Dutch Airlines,* 802 F. Supp. 1203, 1212 (D. N.J. 1992) (quoting cases) (holding that the *Evangelinos* factors are also applicable to determining whether a passenger is disembarking for Article 17 purposes). Specifically, the Third Circuit has held that "three factors are primarily relevant to a determination of the question of liability under Article 17: location of the accident, the activity in which the injured person was engaged, and the control by defendant of such injured person at the location and during the activity taking place at the time of the accident alleged to be 'in the course of any of the operations of embarking.'" *Id.* (citing *Day v. Trans World Airlines,* 528 F.2d

7

31 (2d Cir. 1975), *cert. denied,* 429 U.S. 890, 97 S.Ct. 246, 50 L.Ed.2d 172 (1976); *see also Grimes v. Northwest Airlines, Inc.,* No. 98-cv-4794, 1999 WL 562244, at *2 (July 30, 1999) attached as Ex. "E". Here, Plaintiff has failed to allege any facts to support his claim that he was injured during the operations of embarking or disembarking because his injury did not occur in close relationship to his arriving or departing flights.

I. **The Location of the Accident Does Not Support Plaintiff's Claim that He was Embarking or Disembarking at the Time of the Incident**

Generally, the location factor requires courts to consider whether the incident occurred in a location of close proximity to the arrival or departure gate. *See, e.g., Evangelinos* 550 F.2d at 156 (holding that the plaintiffs were in the process of embarkation because they had received their boarding passes and "were at the departure gate ready to proceed to the aircraft"); *Campbell v. Air Jamaica Ltd.,* 760 F. 3d 1165, 1174 (11th Cir. 2014) (concluding that Article 17 did not apply because plaintiff's alleged injury occurred outside of the terminal "considerably removed from the point of boarding"); *see also McCarthy v. Northwest Airlines, Inc.,* 56 F. 3d 313, 317 (1st Cir. 1995).

In *McCarthy*, the plaintiff filed a similar strict liability claim against Northwest Airlines for injuries she sustained when she slipped and fell on an escalator while traversing from the Northwest ticket counter to the customs area of

the airport, prior to boarding her flight. *See id.* at 314. The plaintiff, who had checked in and received her boarding pass, was running late for her flight and claimed she fell down the escalator because the Northwest agent "'led [her] at a fast trot' in the general direction of the customs area." *Id.* Northwest filed a motion for summary judgement on the ground that the Warsaw Convention[6] did not apply to the plaintiff's injury because she was not embarking at the time she was injured. The district court granted Northwest's motion and, on appeal, the First Circuit affirmed, holding that the plaintiff was not in the operation of embarking at the time of the injury. *See id.* at 318. Considering the location factor, the court noted that the plaintiff had not completed the "conditions precedent" for boarding the flight because she was injured in a common area of the terminal, she was not near the aircraft or the vicinity of the gate, and the act of taking an escalator from one area of the terminal to the next is not a condition precedent to boarding a flight. *See id.*

Similarly here, Plaintiff was not near any point of boarding when the Incident took place. Plaintiff claims he was injured in an area outside of Terminal 3, while he was attempting to board a shuttle bus to flight SN 2096. *See* Compl. at

---

[6] The Montreal Convention, which went into effect in the U.S. in 2003, is an update and continuation of the older Warsaw Convention; case law interpreting them is interchangeable. *Arif Naqvi v Turkish Airlines, Inc.*, 80 F. Supp. 3d 234, 237 (D.D.C. Feb. 23, 2015); *Baah v. Virgin Atl. Airways Ltd.*, 473 F. Supp. 2d 591, 596 (S.D.N.Y. 2007) (citing cases within the Second Circuit).

¶¶ 22-28. At the time of the injury, Plaintiff was not at the gate or in the vicinity of the gate where he deplaned or where he was supposed to catch flight SN 2096. *See id.* Moreover, Plaintiff concedes that he had not yet completed the pre-requisites of boarding flight SN 2096 because he did not check in at the Brussels Airlines counter and he had not received his boarding pass. *See, e.g.,* Compl. at ¶ 29 (stating that Plaintiff had not even received his boarding pass by the time he arrived at the Brussel Airlines counter for flight SN 2096). Accordingly, the location of the injury – on a shuttle bus outside of an airport terminal – does not support Plaintiff's claim that he was injured during the operations of embarking or disembarking.

## II.     British Airways had no Control Over Plaintiff at the Time of the Incident

Plaintiff attempts to establish that British Airways had control over his actions because an agent instructed him to take the shuttle bus from Terminal 3 to Terminal 4 and that he "followed the British Airway[s] agent's instructions, for the immediate purpose of embarking on Brussels Airlines, SN flight 2096." Compl. at ¶23.   However, verbal instructions by a carrier's personnel, does not, for the purposes of Article 17, demonstrate that the airline exerted control over the passenger. *See, e.g., McCarthy,* 56 F. 3d at 21-22 (holding that despite the Northwest agent's instructions that the plaintiff make a "mad dash" to the customs

area, she was not under the exclusive control of the defendant because she could have made her own decisions with regard to getting to the gate). Control by the airline is generally found when the carrier is directing the movement of the passenger and such directions are "relatively closely tied to the physical activity of getting 'on board the aircraft.'" *See Dick v. American Airlines, Inc.*, 476 F. Supp. 2d 61, 63-64 (D. Mass. 2007) (citation omitted).   In *Dick*, the court held that the plaintiff was not under the control of the defendant American Airlines when she was injured, because the incident occurred on an escalator while the plaintiff was on her way to the boarding gate.   *Id.* at 63.   Distinguishing the facts in *Evangelinos*, the court held that American Airlines did not exert sufficient control over the passenger because the injury did not occur during or after the airline began to fulfill its obligations as an air carrier under the conditions of carriage by taking actions such as announcing the flight, taking control of the passengers as a group and assuming responsibility for the passengers' protection.   *See id.* at 64 (*quoting Evangelinos*, 550 F.3d at 156).

Similarly, the British Airways agent's directions to Plaintiff to take the shuttle bus does not show that Plaintiff was under the control of British Airways because the act of boarding the shuttle bus is far removed from any boarding process.   Unlike the plaintiffs in *Evangelinos*, Plaintiff was not boarding a shuttle

bus that would take him directly to the aircraft, but instead was on his way from one terminal to another. *See* Compl. at ¶ 22. By directing Plaintiff to take the shuttle, the British Airways was not taking responsibility for Plaintiff, because boarding the shuttle is not a pre-requisite to boarding, particularly because neither the shuttle bus nor its operations is controlled by British Airways. *See, e.g., Hunter v. Deutsche Lufthansa AG*, 863 F. Supp. 2d 190, 206 (E.D.N.Y. 2012) (holding that the plaintiff was not under the control of the airline when he was injured during a layover while he was in a public area of the terminal that was not controlled by the airline). Therefore, British Airways did not exert control over Plaintiff when he was boarding the shuttle bus.

### III.   The Activity of Boarding the Shuttle Bus Was Not Part of the Embarkation or Disembarkation Process

Finally, the process of boarding the shuttle bus is not considered an operation of embarking or disembarking. Like the location and control factors discussed *supra,* the nature of activity that the plaintiff was engaged in at the time of the incident is relevant to the embarkation/disembarkation analysis only to the extent that it had some connection with the boarding process. For example, in *Evangelinos*, the Third Circuit held that the activity of waiting for a shuttle that would take the plaintiffs to the aircraft was part of the operations of embarkation. *See Evangelinos* 550 F. 2d at 156 ("the plaintiffs had completed virtually all the

activities required as a prerequisite to boarding, and were standing in line at the departure gate ready to proceed to the aircraft"); however *also see Kantonides*, 802 F. Supp. at 1212 (holding that the plaintiff was not in the operation of disembarking when she was injured on the moving walkway because she had already left the aircraft and the arrivals area and was on her way her connecting flight).

When Plaintiff allegedly sustained his injury on the shuttle bus, he was not in the process of proceeding to the aircraft. *See* Compl. at 22 (stating that Plaintiff was taking the shuttle bus to Terminal 4 to get his boarding pass for another flight). Plaintiff also was not leaving an aircraft, as he had disembarked at Terminal 5, well before he reached Terminal 3 to catch the shuttle bus. Plaintiff's activities demonstrate that, at the time of the Incident, he was not engaging in any activity that was connected to boarding or deplaning.

Because Plaintiff was neither embarking or disembarking at the time of the Incident, the Montreal Convention does not apply and Plaintiff fails to state a viable cause of action.

## CONCLUSION

For the foregoing reasons, British Airways respectfully requests that the Court grant its motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated:   May 24, 2017
         Philadelphia, Pennsylvania

CLARK HILL PLC

*/s/ Lisa Carney Eldridge*
Lisa Carney Eldridge (PA ID #062794)
2005 Market Street, Suite 1000
One Commerce Square
Philadelphia, PA 19103
T: (215) 640-8500; F: (215) 640-8501
leldridge@clarkhill.com

-and-

Anthony U. Battista (NY ID #2802775)
(To be Admitted PHV)
CONDON & FORSYTH LLP
7 Times Square
New York, New York 10036
(212) 490-9100

*Attorneys for Defendant*
BRITISH AIRWAYS Plc