IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL E. BRANNEN, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | No.: 4:17-cv-00714 |
| | : | |
| v. | : | Honorable Judge Yvette Kane |
| | : | |
| BRITISH AIRWAYS PLC AND | : | **ELECTRONICALLY FILED** |
| VIKING RIVER CRUISES INC., | : | |
| | : | |
| Defendants. | : | |

## PROPOSED ORDER

AND NOW, this _____ day of _____, 2017, upon consideration of Defendant Viking River Cruises Inc.'s Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil procedure, it is hereby ORDERED that Viking River Cruises Inc.'s Motion to Dismiss is GRANTED. Plaintiff's Complaint is hereby DISMISSED with Prejudice as to Defendant Viking River Cruises Inc.

BY THE COURT:

_____
Honorable Judge Yvette Kane, U.S.D.J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIEL E. BRANNEN, | : CIVIL ACTION |
| Plaintiff, | : No.: 4:17-cv-00714 |
| v. | : Honorable Judge Yvette Kane |
| BRITISH AIRWAYS PLC AND VIKING RIVER CRUISES INC., | : **ELECTRONICALLY FILED** |
| Defendants. | : |

## DEFENDANT VIKING RIVER CRUISES INC.'S
## MOTION TO DISMISS THE COMPLAINT

Defendant Viking River Cruises Inc., by and through its attorneys, Wiggin and Dana LLP hereby moves to dismiss Plaintiff's Complaint for failure to state a claim upon which relief may be granted, and improper venue, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Viking River Cruises Inc. hereby incorporates by references its attached Memorandum of Law and the corresponding exhibit.

Dated: June 22nd, 2017                              Respectfully submitted,

Of Counsel:                                         ___/s/Richard D. Gallucci, Jr.____
                                                    Richard D. Gallucci, Jr.
Joseph G. Grasso                                    **WIGGIN AND DANA LLP**
Jacob A. Sand                                       Two Liberty Place
Wiggin and Dana LLP                                 50 S. 16th Street, Suite 2925
Two Liberty Place                                   Philadelphia, PA  19102
50 S. 16th Street, Suite 2925                       Tel.: 215-988-8317
Philadelphia, PA  19102                             Fax: 215-988-8344
Tel.: 215.988.8310                                  E-Mail: rgallucci@wiggin.com
Fax: 215.988/8344
E-Mail: jgrasso@wiggin.com;
       jsand@wiggin.com

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL E. BRANNEN, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | No.: 4:17-cv-00714 |
| | : | |
| v. | : | Honorable Judge Yvette Kane |
| | : | |
| BRITISH AIRWAYS PLC AND | : | **ELECTRONICALLY FILED** |
| VIKING RIVER CRUISES INC., | : | |
| | : | |
| Defendants. | : | |

## DEFENDANT VIKING RIVER CRUISES INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

Defendant Viking River Cruises Inc. ("VRC") respectfully submits this Memorandum of Law in Support of its Motion to Dismiss the Complaint for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and to enforce the valid forum selection provision in the Binding Contract specifying the Courts of Los Angeles County, California, as the exclusive chosen forum.

Plaintiff's Complaint fails to sufficiently state a claim under the Convention for the Unification of Certain Rules Relating to International Transportation by Air (the "Montreal Convention"). Plaintiff has not alleged sufficient facts to show that (1) VRC was acting as an air carrier, and was, therefore, subject to the Montreal Convention; (2) that the injury giving rise to his claims occurred on board or during the operations of embarking or disembarking an international flight, as required by Article 17 of the Montreal Convention; and (3) that his injury was the result of an "accident" as required to state a claim for relief under Article 17 of the Montreal Convention.

Additionally, Plaintiff's commencement of this action in this District is contrary to the exclusive forum selection, and choice of law provisions included in VRC's "Binding Contract," which specifies that:

> "This Contract is governed by the laws of the State of California, exclusive of conflicts of law provisions. All disputes relating to this Contract directly or indirectly shall be litigated if at all in and before any court of competent jurisdiction located in Los Angeles County, California, USA, to the exclusion of the courts of any other jurisdiction, and you agree to be bound by and submit to the governing law, venue and jurisdiction stated in this Contract." Binding Contract attached hereto as **Exhibit A** at ¶ 3.[1]

## STATEMENT OF FACTS

Plaintiff has alleged the following relevant facts in his Complaint. On September 24, 2014, Plaintiff "made reservations with Viking for 'Viking Portraits of Southern France'" cruise. Complaint at ¶ 18. VRC "arranged for air travel" from Newark, New Jersey, to Marseilles, France, with a connection at London – Heathrow ("LHR"), departing on October 31, 2015. *Id.* at ¶ 19. Both legs of the original connecting flight were to be aboard British Airways flights. *Id.* On October 31, 2015, Plaintiff and his wife departed from Newark, and arrived at LHR on November 1, 2015. After landing at LHR, Plaintiff and his wife were informed by a British Airways agent that their connecting flight to Marseilles had been cancelled. *Id.* at ¶¶ 20-21. A British Airways agent re-booked the Plaintiff and his wife onto a Brussels Airlines flight to Brussels, Belgium, with a connecting flight to Marseilles. *Id* at ¶ 21. Plaintiff and his wife were allegedly instructed by the British Airways agent to take the inter-terminal shuttle bus to transit to the departure gate for their new connecting flight. *Id* at ¶ 22.

---

[1] Additionally, as stated in the Contract, VRC acts "solely as a sales agent" and "neither owns nor operates any vessels or other means of transportation." Moreover, the entity responsible for performing the actual cruise carriage (which is not a party to this action) and related transportation includes in its Passenger Ticket Contract a similar provision; which states that: "ANY DISPUTE ARISING OUT OF OR IN CONNECTION WITH THIS PASSENGER TICKET CONTRACT SHALL BE DETERMINED BY THE CIVIL COURT OF THE CANTON OF BASEL-STADT" and that such a dispute shall be governed by Swiss law.

3

Plaintiff has not alleged that the inter-terminal bus was provided or controlled by any party to this matter. *Id.* at ¶¶ 22-30

Plaintiff and his wife left the terminal and waited for the inter-terminal bus; when it arrived, the bus stopped approximately 20-22 inches from the curb. *Id.* at ¶¶ 23-24. Several other passengers boarded the bus, including Plaintiff's wife, without difficulty. *Id.* at ¶ 25. Plaintiff, who suffers from arthritis, and was using a cane to walk at the time, attempted to step on the bus with his "good, left foot," but his foot slipped off the bus, "causing him to hit his left shin on the bus ledge, which then caused him to fall backward." *Id.* at ¶¶ 26-27.

Plaintiff has not alleged that any unexpected event or occurrence transpired that caused Plaintiff's injuries. *Id.*

Plaintiff was helped up from his fall by other passengers, but did not suffer any immediate pain or visible injury. *Id.* at ¶¶ 28-30. When Plaintiff and his wife arrived at the gate for their new departing flight, they were informed that that flight had been canceled as well, and that there were no other flights available that day. *Id.* at ¶ 30.

That evening, Plaintiff discovered an injury to his left shin. *Id* at ¶ 31. The next day, Plaintiff reported the injury to a British Airways Passenger Experience Manager. *Id* at ¶¶32-33. Plaintiff did not seek medical attention for his injuries. *Id.* at ¶¶ 31-35. In fact, it was not until November 10, 2015, at a previously scheduled and unrelated medical appointment with his podiatrist, that the Plaintiff's alleged injury was even examined by medical personnel. *Id.* at ¶ 35. The Plaintiff was eventually diagnosed with cellulitis and a severe infection. ¶ 37.

## **PROCEDURAL HISTORY**

Plaintiff commenced this claim by filing the Complaint on April 21, 2017, seeking damages for injuries he allegedly sustained to his left shin while boarding the inter-terminal bus.

4

On May 26, 2017, Plaintiff and VRC agreed to extend VRC's time to respond to the Complaint until June 15, 2017. VRC now files its Motion to Dismiss.

## **LEGAL STANDARD**

The Third Circuit has articulated a three tier test to determine if a complaint contains sufficient allegations of facts to overcome a motion to dismiss. *See, Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). When considering a motion to dismiss for failure to state a claim, a court must:

> "'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'"

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir.2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)) (internal citations omitted). If a complaint does not allege sufficient facts to give rise to a "plausible claim for relief" the complaint should be dismissed pursuant to Rule 12(b)(6). *Id.* at 125.

A cruise ticket, and the provisions contained in the ticketing contract, is considered a maritime contract, and is therefore subject to federal maritime law. *See, The Moses Taylor*, 71 U.S. (4 Wall.) 411, 427, 18 L.Ed. 397 (1886); *Hodes v. S.N.C. Achille*, 858 F.2d 905, 909 (3d Cir.1988) *overruled on other grounds by Lauro Lines s.r.l. v. Chasser*, 490 U.S. 495, 109 S.Ct. 1976, 104 L.Ed.2d 548 (1989); *Irwin v. Celebrity Cruises, Inc.*, No. CIV.A. 12-4385, 2013 WL 1314463, at *2 (E.D. Pa. Apr. 2, 2013). The Supreme Court has held that forum selection clauses, even those specifying foreign forums, should be "given controlling weight in all but the most exceptional cases." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. Of Tex.*, 134 S. Ct. 568, 575 (2013); *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 9–10, 92 S.Ct. 1907, 32

5

L.Ed.2d 513 (1972); *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 33, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (Kennedy, J., concurring). "[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens.*" *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 580, 187 L. Ed. 2d 487 (2013).

## ARGUMENT

Article 17 of the Montreal Convention permits a passenger to bring a claim against an international air carrier for injuries that occur during the operations of embarking, disembarking, or on board an international flight. Montreal Convention Art. 17. Those injuries must occur as the result of an "accident" which is defined as "an unexpected or unusual event or happening that is external to the passenger." *Air France v. Saks*, 470 U.S. 392, 405, (1985). Plaintiff's complaint is deficient as it fails to sufficiently allege that: (1) VRC is an air carrier subject to the terms of the Montreal Convention; (2) that Plaintiff's injuries occurred during the operations of embarking, disembarking or on board an international flight; and (3) that Plaintiff's injuries were the result of an "accident" as required to state a claim under the Montreal Convention.

Finally, Plaintiff is bound by the terms of the Binding Contract, provided to the Plaintiff with confirmation of his reservations, which specify the courts in "Los Angeles County, California," as the exclusive forum for "[a]ll disputes relating to this Contract directly or indirectly" **Exhibit A** at ¶ 3. For the foregoing reasons, and as explained in more detail herein, the VRC's Motion to Dismiss should be granted and the Complaint should be dismissed with prejudice.

### VRC is not a Carrier Subject to the Montreal Convention

The Montreal Convention is a treaty that governs an international air carrier's liability to passengers for injuries or other loss that may occur during international air carriage. *Schaefer–Condulmari v. U.S. Airways Grp., Inc.*, No. Civ.A.09–1146, 2009 WL 4729882, at *4 (E.D.Pa. Dec.8, 2009) (citing *Sompo Japan Ins. Co. v. Nippon Cargo Airlines Co.*, Ltd., 522 F.3d 776, 779–781 (7th Cir.2008)). "The Montreal Convention supersedes and replaces the earlier Warsaw Convention, is largely substantively unchanged from its predecessor treaty, and is interpreted using case law construing the Warsaw Convention." *Lee v. AMR Corp.*, No. CIV.A. 15-2666, 2015 WL 3797330, at *2 (E.D. Pa. June 18, 2015). While the Convention does not define air carrier, courts have interpreted the term to mean "airlines that actually transport passengers or baggage." *Orova v. Nw. Airlines Inc.*, No. 03-4296, 2005 WL 281197, at *3 (E.D. Pa. Feb. 2, 2005) (quoting *Kapar v. Kuwait Airways Corp.*, 845 F.2d 1100, 1103 (D.C. Cir. 1988)); *see also Pflug v. Egyptair Corp.*, 961 F.2d 26, 31 (2d Cir. 1992). Additionally, the Montreal Convention will apply to a "contracting carrier" who "makes a contract of carriage governed by th[e] Convention…and another person (hereinafter referred to as "the actual carrier") performs, by virtue of authority from the contracting carrier the whole or part of the carriage." Montreal Convention Art. 39.

As an initial matter, VRC is not a "carrier" subject to the Montreal Convention. Plaintiff has not alleged that VRC is in the business of performing international air carriage, nor has he alleged that there was any contract with VRC whereby VRC agreed to provide international air carriage to the Plaintiff. ¶¶ 12; 19-23. Plaintiff has alleged that VRC is a "contracting carrier," and, as such, is subject to the Montreal Convention, but these allegations are the type of conclusory statements unsupported by any factual basis offered purely to prop up an otherwise

unsupported claim that are not entitled to any weight. *Iqbal*, 129 S.Ct. at 1949 ("threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Plaintiff has not alleged that VRC made a contract for international air carriage with him, nor has he alleged that British Airways subsequently performed the carriage contracted for "by virtue of authority [delegated] from" VRC. To the contrary, the factual allegations in the Complaint show only that VRC "arranged for air travel…on [a] British Airways flight," and not that VRC ever contracted to actually provide that carriage itself, or delegated the authority to provide carriage to British Airways.[2] *Cf. Pierre-Louis v. Newvac Corp.*, 584 F.3d 1052, n.6 (11th Cir. 2009) (holding that a party that "assumed the responsibility to supply the aircraft and crew, and to otherwise conduct itself as a carrier, for the transportation of [another carrier's] customers" is a contracting carrier); *see also*, Best *v. BWIA W. Indies Airways Ltd.*, 581 F. Supp. 2d 359, 364 (E.D.N.Y. 2008) ("The relationships typically covered by Article 39 include 'code share operations and operations where one carrier offers service using an aircraft and crew leased from another carrier'") (quoting Article-by-Article Analysis of the Convention for the Unification of Certain Rules for International Carriage by Air Done at Montreal May 28, 1999, reprinted in S. Treaty Doc. No. 106-45, 1999 WL 33292734 (2000) at Art. 39); *Maranga v. Abdulmutallab*, 903 F. Supp. 2d 270, 273 (S.D.N.Y. 2012) (holding that a company that has no involvement in the operation or ticketing of an airline is not subject to the Montreal Convention). Simply "arranging" for air travel does not make one an international air carrier; if this were the case any third-party who booked a flight for another person would be subject to the Montreal Convention. Moreover, the facts alleged in Plaintiff's Complaint make clear that British

---

[2] Notably, in the Binding Contract, VRC explicitly states that it "cannot confirm airlines seating assignments, add frequent flyer numbers to airline records or request special meals; these services should be arranged by a guest's travel agent or directly with the airline." **Exhibit A** at ¶ 12. As such, it would be unreasonable to find that VRC is an international air carrier when it is unable to perform these basic tasks related to air carriage.

Airways was the sole party who contracted to actually provide air carriage to the Plaintiff. This is consistent with the terms of the Binding Contract which state:

> "ALL TRAVEL SERVICES, INCLUDING LAND, AIR AND WATER TRANSPORTATION…ARE PURCHASED FROM THIRD PARTY PROVIDERS UNRELATED TO VIKING, WHICH NEITHER OWNS NOR OPERATES ANY VESSELS OR OTHER MEANS OF TRANSPORTATION." **Exhibit A** at ¶ 2.

The Binding Contract also includes a limitation of liability provision which states, in relevant part:

> "Under no circumstances shall VIKING be construed as a carrier or as a provider of travel services or accommodations of any nature, it being understood that all such services and accommodations shall be governed by agreements between you as the Guest and each such third party provider as an independent contractor." **Exhibit A** at ¶ 10.

Finally, VRC specifically addresses "Services Provided by Airlines" in the Binding Contract, stating that VRC has "no responsibility for altered travel plans caused by airlines delays or for any act, omission or event occurring while not on board." **Exhibit A** at ¶ 12. As a result, even if VRC were a "contracting carrier," which it is not, Plaintiff's claims would be barred by the limitation of liability provisions in the Binding Contract.

Plaintiff has, therefore, failed to allege sufficient facts that show VRC was acting as a "contracting carrier" subject to the Montreal Convention.

### Plaintiff's Injuries did not Occur During the Operations of Embarking, Disembarking or On-Board an International Flight

In addition to the legal arguments set forth herein, and in order to reduce duplicative briefing, VRC adopts and relies upon the legal arguments set forth in the Motion to Dismiss and supporting memorandum of law filed by co-defendant, British Airways, in this matter.

Even if VRC were a carrier subject to the Montreal Convention, Plaintiff's injuries did not occur during the process of embarking, disembarking or on-board an international flight, and as such, Article 17 is not applicable and, therefore, the Complaint fails to state a claim and

9

should be dismissed.  For a carrier to be liable for injuries sustained due to an "accident," that "accident" must "take place on board the aircraft or in the course of any of the operations of embarking or disembarking." Montreal Convention Art. 17.  When evaluating whether or not a person is embarking or disembarking a flight courts will evaluate the person's location relative to the aircraft, the degree of physical control exercised over the plaintiff by the carrier, and the relationship between the cause of the injury and the act of embarking or disembarking an aircraft. *Evangelinos v. Trans World Airlines, Inc.*, 550 F.2d 152, 155 (3d Cir. 1977); *Brown v. U.S. Airways, Inc.*, No. CIV. A. 97-CV-7238, 1998 WL 634901, at *1 (E.D. Pa. Sept. 16, 1998).

The location where Plaintiff allegedly sustained his injuries clearly demonstrates that he was not involved in the process of embarking or disembarking from an international flight.  As alleged in the Complaint, Plaintiff was not on board, in the immediate process of boarding or deplaning, or even at a departure terminal at the time of the injury; Plaintiff was instead in the process of travelling between two airport terminals.  Simply because a person is en route to a particular place with the intention of boarding a plane, or has previously disembarked from an international flight does not mean they are entitled to bring a claim under the Montreal Convention.  Courts have routinely held that a person traveling between an airport's terminals under their own control, is in fact not in the process of embarking or disembarking an international flight. *Kantonides v. KLM Royal Dutch Airlines*, 802 F.Supp. 1203, 1213 (D.N.J.1992) (finding plaintiffs moving through the airport at their own pace, under their own control, while on a moving walkway were not disembarking under the Warsaw Convention); *Brown v. U.S. Airways, Inc.*, No. CIV. A. 97-CV-7238, 1998 WL 634901, at *1 (E.D. Pa. Sept. 16, 1998) (holding that an injury that occurred while transferring between flights using a courtesy shuttle provided by the defendant airline did not occur during disembarking or

10

embarking, despite having occurred "moments" after arrival). Moreover, Plaintiff has not alleged that VRC had any control over his movements or the operations of embarking and disembarking. Plaintiff has, therefore, failed to establish an essential element of his claim; that his injury occurred during the operations of embarking or disembarking an international flight, and the Complaint should be dismissed.

### Plaintiff's Injuries were not the Result of an "Accident"

Plaintiff has failed to allege that his injuries are the result of an "accident" and, as such, the Complaint should be dismissed. For a complaint to state a claim under Article 17 of the Montreal Convention, the passenger's injury must be the result of an "accident." *See Plonka v. U.S. Airways*, No. 13-v-7560, 2015 WL 6467917 at *2 (E.D. Pa. Oct. 27, 2015). The term "accident" as used in the Montreal Convention is defined as "an unexpected or unusual event or happening that is external to the passenger." *Air France v. Saks*, 470 U.S. 392, 405, (1985) (defining the term "accident" as used in the Warsaw Convention). Injuries caused by a plaintiff's internal medical conditions will not constitute an accident, even if those conditions are aggravated by the normal conditions of international air travel. *See e.g., Id*; *Plonka* at *2; *Farra v. Am. Airlines, Inc.*, No. CIV. A. 00-67, 2000 WL 862830, at *3 (E.D. Pa. June 28, 2000) (holding that a passenger's allergic reaction to meals served onboard an international flight, and resulting illness did not constitute an "accident"). The term "accident" should not be interpreted to "cover routine travel procedures that produce an injury due to the peculiar internal condition of a passenger."[3] *Air France v. Saks*, 470 U.S. 392, 405, (1985).

---

[3] The Court provided examples of injuries that were not "accidents" for the purposes of the Convention including: "sitting in airline seat during normal flight which aggravated hernia"; "fainting while waiting in the terminal for one's baggage"; "sitting in airline seat during normal flight which aggravated thrombophlebitis."

As an initial matter, boarding a stationary inter-terminal bus is clearly a "routine travel procedure." It is also clear from the facts alleged in the Complaint that the alleged injury was caused by an "internal condition" and not by an "unexpected" or "unusual" event. Plaintiff has in fact not alleged that any particular "event" occurred that caused his fall. Instead, the only possible causes alleged in the Complaint are a routine step from a curb to a bus, and the Plaintiff's difficulty walking. Notably, other passengers were able to successfully board the bus without incident. As a result, the only possible inference is that it was Plaintiff's "peculiar internal condition" that caused his injury. Plaintiff has, therefore, failed to sufficiently allege that an "accident caused his injuries," and, as a result, the Complaint should be dismissed.

### The Complaint Should be Dismissed based on the Forum Selection Clause Contained in the Passenger Ticket Contract.

The VRC Binding Contract corresponding to Plaintiff's travel arrangements includes a forum selection provision specifying "any court of competent jurisdiction located in Los Angeles County, California" as the required forum for any action relating to the Contract, and that any such dispute would be governed by the "laws of the State of California." **Exhibit A**, at ¶3. As noted above, cruise ticket contracts are maritime contracts and, as such, the provisions in such contracts will be evaluated under federal maritime law. *The Moses Taylor*, 71 U.S. (4 Wall.) 411, 427, 18 L.Ed. 397 (1886); *Hodes v. S.N.C. Achille*, 858 F.2d 905, 909 (3d Cir.1988) *overruled on other grounds by Lauro Lines s.r.l. v. Chasser*, 490 U.S. 495, 109 S.Ct. 1976, 104 L.Ed.2d 548 (1989); *Irwin v. Celebrity Cruises, Inc.*, No. CIV.A. 12-4385, 2013 WL 1314463, at *2 (E.D. Pa. Apr. 2, 2013). Under maritime law, "[t]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 580, 187 L. Ed. 2d 487 (2013). A court may dismiss a claim brought under the Montreal

12

Convention based on *forum non conveniens*. *See e.g. Pierre–Louis v. Newvac Corp.*, 584 F.3d 1052, 1058 (11th Cir.2009); *In re Air Crash Over Mid-Atl. on June 1, 2009*, 760 F. Supp. 2d 832, 841 (N.D. Cal. 2010); *Khan v. Delta Airlines, Inc.*, No. 10 CIV. 2080 BMC, 2010 WL 3210717, at *3 (E.D.N.Y. Aug. 12, 2010). The Supreme Court has held that forum selection clauses in such contracts should be given all but controlling weight, and that a party contesting the application of a valid forum selection clause must show that the "public-interest factors overwhelmingly disfavor" enforcement of the forum selection clause. *Atl. Marine* at 583; *see also, M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 19, 92 S. Ct. 1907, 1918, 32 L. Ed. 2d 513 (1972).

For a forum selection clause to be valid, it must be "reasonably communicated" to the passenger, in order to ensure that the passenger is afforded reasonable notice of the forum's selection clause, and to comply with the concept of "fundamental fairness." *Hicks v. Carnival Cruise Lines, Inc.*, No. CIV. A. 93-5427, 1994 WL 388678, at *3 (E.D. Pa. July 26, 1994); *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991). When determining if a forum selection clause is reasonably communicated to a passenger, courts will evaluate the visual and physical characteristics of the forum selection clause as well as the contractual terms contained therein. *See Marek v. Marpan Two, Inc.*, 817 F.2d 242, 245 (3d Cir.); *Tone v. Carnival Cruise Lines, Inc.*, 1993 WL 437650 at *2 (E.D.Pa. Oct. 28, 1993).

The forum selection clause in the Binding Contract for Plaintiff's trip clearly meets the "practical standard of reasonable communicativeness" both in terms of the language used in the forum selection provision and the physical characteristics of the forum provision within the context of the Contract. *Tone v. Carnival Cruise Lines, Inc.*, No. CIV. A. 93-3747, 1993 WL

437650, at *2 (E.D. Pa. Oct. 28, 1993). The Passenger Ticket Contract begins with the words "IMPORTANT INFORMATION," and within the introductory paragraph states that:

> "THIS CONTRACT CONTAINS SUBSTANTIAL PENALITIES FOR CANCELATION, AS WELL AS SPECIFIC LIMITATIONS OF LIABILITY. PLEASE REVIEW THIS CONTRACT CAREFULLY, SO THAT YOU UNDERSTAND BOTH YOUR AND OUR RIGHTS AND RESPONSIBILITIES."
> **Exhibit A** at ¶ 1.

Paragraph 3, of the Binding Contract is entitled "Dispute Resolution," and includes the language:

> "This Contract is governed by the laws of the State of California, exclusive of conflicts of law provisions. All disputes relating to this Contract directly or indirectly shall be litigated if at all in and before any court of competent jurisdiction located in Los Angeles County, California to the exclusion of the courts of any other jurisdiction and you agree to be bound by and submit to the governing law, venue and jurisdiction stated in this Contract." **Exhibit A** at ¶3.

The clause itself is clearly not "so muddled or illegible as to be unenforceable" and is, therefore, valid and enforceable. *Marek* at 247 (quoting *Gardner v. Greek Line*, 388 F. Supp. 856, 858 (M.D. Pa. 1975)). As a result, this forum selection clause should be considered a manifestation of the parties' agreement that the Los Angeles, California, will be the most convenient forum for any dispute arising out of the Passenger Ticket Contract. As a result, the Complaint should be dismissed.

Dated:  June 22nd, 2017                                Respectfully submitted,


Of Counsel:                                            /s/Richard D. Gallucci, Jr.
                                                       Richard D. Gallucci, Jr.
Joseph G. Grasso                                       **WIGGIN AND DANA LLP**
Jacob A. Sand                                          Two Liberty Place
Wiggin and Dana LLP                                    50 S. 16th Street, Suite 2925
Two Liberty Place                                      Philadelphia, PA  19102
50 S. 16th Street, Suite 2925                          Tel.: 215-988-8317
Philadelphia, PA  19102                                Fax: 215-988-8344
Tel.: 215.988.8310                                     E-Mail: rgallucci@wiggin.com
Fax: 215.988/8344
E-Mail: jgrasso@wiggin.com;
        jsand@wiggin.com