IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIEL E. BRENNAN, | : CIVIL ACTION |
| Plaintiff, | : NO.: 4:17-cv-00714 |
| | : Honorable Judge Yvette Kane |
| v. | : |
| BRITISH AIRWAYS PLC and VIKING RIVER CRUISES INC., | : ELECTRONICALLY FILED |
| Defendants. | : |

**REPLY IN FURTHER SUPPORT OF
BRITISH AIRWAYS PLC'S MOTION TO DISMISS THE COMPLAINT**

**INTRODUCTION**

Plaintiff brings this action against British Airways, Plc ("British Airways") for injuries he sustained while traversing between terminals at London Heathrow Airport ("LHR Airport") on November 1, 2015.  Plaintiff claims that this action falls within the scope of the Montreal Convention because his injury occurred during the "operations of embarking" the aircraft, but  Plaintiff fails to allege facts that support this conclusion.  Courts interpreting the Montreal Convention are consistent in holding that the accident must be closely related, either physically or temporally, to the actual boarding of an aircraft to be considered part of the "operations of embarking."  Here, Plaintiff concedes that he was not at the terminal

215990956

where his flight was scheduled to depart and that he did not actually board a flight until the next day. Thus, based on Plaintiff's own allegations, he was not injured during the operations of embarking an aircraft. Furthermore, Plaintiff fails to establish control by British Airways. An air carrier does not exert control over a passenger by giving the passenger directions, as Plaintiff argues here. To impute control in this case would go beyond the scope of Article 17 and the Montreal Convention. Finally, Plaintiff should not be permitted to amend the Complaint to add allegations against British Airways. Amending the Complaint at this point would be futile, because an amended Complaint also would not survive a motion to dismiss. Accordingly, Plaintiff's Complaint should be dismissed with prejudice.

## ARGUMENT

### I. Plaintiff Fails to Allege Facts to Show That He Was Physically or Temporally Close to Embarking an Aircraft When the Accident Occurred

Plaintiff alleges that his injury occurred within the "operations of embarking"[1] because he was "immediately proceeding to his connecting flight" in Terminal 4. *See* Pl's Opp. at p. 5. However, the "operations of embarkation" do

---

[1] Plaintiff fails to oppose British Airways' argument that this alleged injury occurred within the "operations of disembarking," so it is not addressed in great detail here. Notwithstanding, for the reasons set forth in British Airways' memorandum of law, Plaintiff was not in the course of disembarking when the accident occurred. *See Maugnie v. Compagnie Nationale Air France*, 549 F.2d 1256, 1259 (9th Cir. 1977) (holding that the plaintiff was not in the operations of embarking where she exited the plane, entered the airport and proceeded down a passenger corridor to her connecting flight). Here, Plaintiff was not disembarking because his original flight to LHR Airport landed in Terminal 5. *See* Pl's Compl. at ¶ 20. Plaintiff disembarked the aircraft at Terminal 5 and traversed the airport to Terminal 3 where the alleged injury occurred. *See id.* at ¶ 21. As held in *Maugnie*, Plaintiff was too far removed from the original flight to be injured during the operations of disembarking the aircraft at Terminal 5.

215990956

not include attempts to travel to the airport or the terminal, but rather require that the boarding of an aircraft is imminent.  In other words, "[m]ost courts have concluded that 'embarking' requires a close temporal and physical connection to the actual boarding of an airline flight."  *Kalantar v. Lufthansa German Airlines*, 276 F. Supp. 2d 5, 10 (D.D.C. 2003) (*citing cases*).  Such a connection is not alleged in the Complaint.

Unlike Plaintiff's claims here, a physical and temporal connection was found in *Evangelinos*, where the court held that the plaintiffs' accident fell within the scope of Article 17 because "they were performing the final act required as a prerequisite to boarding busses employed by TWA to take the Evangelinos family to the aircraft."  *Evangelinos v. Trans World Airlines, Inc.*, 396 F.2d 152, 155 (3d Cir. 1977).  By contrast, courts have consistently held that passengers are not "embarking" where they are too far removed from the actual boarding process.  In *Adelson v. American Airlines, Inc.*, No. 17-cv-00548, 2017 WL 2265459, at *5 (N.D.Cal. May 24, 2017), a case upon which Plaintiff heavily relies, the court granted the airline's motion to dismiss the plaintiff's claims for injuries he sustained when he was hit by a door as he was entering Terminal 5 and after he disembarked the inter-terminal shuttle bus at LHR Airport.  The court found that the plaintiff failed to establish that he was injured during the operations of embarking because, among other reasons, he failed to "reveal his location relative

to his connecting flight." Similarly in *Kantonides v. KLM Royal Dutch Airlines*, 802 F. Supp. 1203, 1212 (D. N.J. 1992), the court held that the plaintiff's accident did not occur within the operations of embarking because she was injured more than one hour before her flight was scheduled to depart, she was not standing in line to board and "she was still 'two hundred to five hundred feet'" from the boarding gate. *See also Schmidkunz v. Scandinavian Airlines Systems*, 628 F.2d 1205, 1207 (9th Cir. 1980) (holding that the plaintiff's accident did not occur within the operations of embarking even though she was connecting flights because "she had not received her boarding pass [and] was not imminently preparing to board the plane"); *see also Hunter v. Deutsche Lufthansa AG*, 863 F. Supp. 2d 190, 206 (E.D.N.Y. 2012) (holding that the plaintiff's accident did not fall within the scope of Article 17 because he had an hour between flights).

Given the case precedent on this issue, Plaintiff must allege facts to show that his injury occurred while embarkation of an aircraft was imminent, not embarking a shuttle to take him to the terminal. *See McCarthy v. Northwest Airlines, Inc.*, 56 F. 3d 313, 317 (1st Cir. 1995) (stating that "the language of Article 17 [ . . . ] strongly suggests that there must be a tight tie between an accident and the physical act of entering an aircraft") (citation omitted). Plaintiff's Complaint fails in this regard. Plaintiff's allegations show that he was far removed from the actual boarding process. Unlike the plaintiffs in *Evangelinos*, Plaintiff

4

fails to allege that he had completed all of the prerequisites of boarding. In fact, Plaintiff actually concedes that he still had to check-in at the Brussels Airlines counter and obtain a boarding pass.[2] *See* Pl's Compl. at ¶ 22. Furthermore, like the plaintiff in *Adelson*, Plaintiff's allegations show that the injury occurred before he arrived in the terminal where his flight was scheduled to depart. *See* Pl's Compl. at ¶ 24 (alleging that the accident occurred as he was boarding a shuttle bus at Terminal 3 and before he arrived at Terminal 4).

Moreover, Plaintiff fails to plead any facts that would establish physical or temporal distance from the act of boarding.[3] Plaintiff fails to allege what time his flight was boarding at Terminal 4, whether he was permitted to proceed to the inter-terminal shuttle at his own pace or whether he was required to rush, or how far he was (distance-wise) from his flight when the injury occurred. *See id.*, *generally*. Without more facts about the actual imminence of the act of boarding, Plaintiff fails to establish that the location of the accident (Terminal 3, at the bus stop) or the activity he was engaged in at the time (boarding an inter-terminal shuttle bus) were part of the operations of embarking his flight in Terminal 4.

Because Plaintiff is unable to establish a temporal or physical connection to boarding an aircraft, he attempts to argue that Article 17 covers all of his

---

[2] Plaintiff's Opposition states that the British Airways agent provided him with an e-ticket receipt for the Brussels Airlines flight, but he does not deny that he was required to check-in, obtain a boarding pass and seating assignments at Terminal 4. *See*, *e.g.*, Pl's Opp. at p. 5.

[3] As noted in Plaintiffs' Complaint, Plaintiff did not board a flight until the following day. *See* Pl's Compl. at ¶ 30.

movements from the time he landed at LHR Airport to the moment he left LHR Airport the following day.  However, this argument is futile because liability under the Montreal Convention does not extend that far.  In *Rabinowitz v. Scandinavian Airlines*, the plaintiffs sought damages for an injury Ms. Rabinowitz sustained when she was using the moving walkway to traverse the airport from Concourse C to Concourse B.  *See Rabinowitz v. Scandinavian Airlines*, 741 F. Supp. 441, 442 (S.D.N.Y. 1990).  The plaintiffs argued that the defendant air carrier should be liable for injuries Ms. Rabinowitz sustained while connecting flights because she booked a continuous trip with one airline.  The court disagreed.  In holding that the accident did not occur within the operations of embarking or disembarking, the court held "[t]o adopt plaintiffs' position of continuous liability from the time the passenger embarks on the first series of connecting flights [ . . . ] until she disembarks from the final flight would be to impose liability on the airline [ . . . ] in direct contravention of the explicit terms and purpose of Article 17." *Id.* at 446; *see also  Kantonides*, 802 F. Supp. at 1212 (holding that the plaintiff's injury, which occurred while she was in the process of connecting flights did not fall within the scope of Article 17).  Similarly here, British Airways should not be liable for injuries that occurred while Plaintiff was attempting to traverse between terminals.  This is not what the Montreal Convention intends to protect against and this Court should not allow Plaintiff's claims to survive dismissal.

## II. Plaintiff Fails to Show that British Airways Controlled His Actions at The Time of the Incident

Plaintiff alleges that British Airways exercised control over his actions because a British Airways ticket agent gave him instructions to take the "airport's inter-terminal transfer bus system." *See* Pl's Compl. at ¶ 22. It was because of these directions, Plaintiff alleges, that he was on the shuttle bus on which the slip and fall occurred. Assisting a passenger by providing information does not give rise to liability under the Montreal Convention. In this case, there can be no liability against British Airways under the Montreal Convention or otherwise as, by Plaintiff's own concession, the inter-terminal bus system is not controlled by British Airways. The control factor, as set forth in *Evangelinos*, is meant to apply to circumstances where the airline is able to control the passenger's movement and restrict the passenger to a specific area of the terminal. *See Evangelinos*, 396 F.2d 155 (finding control where the plaintiffs' flight had already been called for boarding and "they were congregated in a specific geographical area designated by TWA and were identifiable as a group associated" with their flight). There is no indication in any case law cited by Plaintiff to support his contention that, by providing directions to an inter-terminal shuttle bus that is owned and operated by LHR Airport, British Airways exercised control over Plaintiff. In fact, to the contrary, the court in *Adelson* explicitly rejected this notion, holding that, if the plaintiff sought leave to amend his complaint, he would be required to show that

7

the acts of "departing from the [inter-terminal] shuttle bus [and] walking through the door" where he was injured "were conditions imposed by the airline for embarking on his next flight, rather than conditions imposed by the airport or the country, as may be the case for security or baggage procedures." *See Adelson*, 2017 WL 2265459, at *6.

Here, Plaintiff fails to allege that the condition that he take the "airport's inter-terminal transfer bus" was a condition imposed by British Airways, not a condition imposed by LHR Airport, which owns, operates and manages transporting passengers between terminals at LHR Airport.[4]  Without allegations that British Airways controlled Plaintiff's method of traversing through the airport, Plaintiff fails to establish control. *See Rabinowitz*, 741 F. Supp. at 447 ("Here, too, plaintiffs' allegations that the [airline's] employee directed them toward the moving sidewalk does not rise to any level of control by [the airline] [ . . . as there is] no airline control in formal, customary practices of directing and assisting passengers upon arrival [. . . ]").

### III. Plaintiff's Request for Leave to Amend Should be Denied as Futile

Although leave to amend is in the sound discretion of this Court, Plaintiff's request for leave to amend may be denied where, as here, the proposed amendment would not withstand a motion to dismiss. *See Massarky v. General Motors Corp.*,

---

[4] Additionally, Plaintiff just as likely could have taken a taxi or walked between terminals and was free to choose how and when he would go to Terminal 4.

8

215990956

706 F. 2d 111, 125 (3d Cir. 1983); *see also Oran v. Stafford*, 226 F. 3d 275, 291 (3d Cir. 2000) ("a District Court may deny leave to amend on the grounds that amendment would cause undue delay or prejudice, or that amendment would be futile."). In determining whether an amendment of the pleadings would be futile, the court must apply the "'same standard of legal sufficiency that applies under rule 12(b)(6).'" *Oran*, 226 F. 3d at 291. Plaintiff's reasons for wanting to amend the Complaint would not save his claims from dismissal.

Plaintiff seeks to leave to amend the Complaint based on the United States District Court of the Northern District of California's decision in *Adelson v. American Airlines* and to add the following facts: (1) "some" of Plaintiff's luggage was checked when he left Newark Airport (the airport where his flight originated); (2) that he did not receive checked luggage when he landed in LHR Airport; and (3) that Plaintiff had no intention of roaming publicly. *See* Pl's Opp. at p. 14. Plaintiff's reliance on *Adelson* is misplaced. First, the court *granted* the air carrier's motion to dismiss the *Adelson* plaintiff's complaint because, like Plaintiff here, he "fail[ed] to establish under these three factors, or any other circumstances, that he was engaged in the operations of embarking or disembarking as understood by our court of appeals in interpreting Article 17." *See Adelson*, 2017 WL 2265459, at *5.

215990956

Further, the facts of *Adelson* are distinguishable from the facts at bar here. Arguably, the *Adelson* plaintiff was physically closer to boarding an aircraft, as his injury occurred when he was entering the terminal where his flight was scheduled to depart and he already held his boarding ticket. *See id.* at *1. Here, Plaintiff fails to allege when his flight was scheduled to depart, he failed to actually board a flight until the following day and he concedes that he did not have a boarding pass at the time of the Incident. *See* Pl's Compl. at ¶¶ 22, 30. Furthermore, the *Adelson* plaintiff claimed that his entire journey through LHR Airport was controlled by British Airways, including his departure on the inter-terminal bus and his entrance into the door that caused his injury. *See Adelson*, 2017 WL 2265459, at *6. However, the court cautioned that, these actions "*may* be legally supportable if Adelson" could show that each portion of his journey through the airport, including his departure on the inter-terminal shuttle bus was "imposed by the airline for embarking on his next flight, rather than condition imposed by the airport." *See id.* Although Plaintiff here alleges that a British Airways agent gave him directions to use the airport shuttle, he did not make any allegations that the use of the shuttle was a condition imposed by British Airways.

Finally, Plaintiff's claim that he was not going to roam freely around LHR Airport would not be sufficient to survive a motion to dismiss because it does not cure the other defects in Plaintiff's pleadings and Opposition papers, namely his

failure to establish a temporal and physical connection to boarding an aircraft. *See Kantonides*, 802 F. Supp. at 1211-12 (holding that the plaintiffs were not injured during the operations of embarking even though they "took a straight path" to their connecting gate when the injury occurred). Because Plaintiff's added allegations would not save his claim from dismissal, his request for leave to amend the Complaint should be denied.

## CONCLUSION

For the foregoing reasons and the reasons set forth in British Airways Plc's Memorandum of Law in Support of its Motion to Dismiss, British Airways respectfully requests that the Court grant its motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated:   July 12, 2017                                              **CLARK HILL PLC**

      */s/ Lisa Carney Eldridge*
Erin C. Galbally – PA 208442
Lisa Carney Eldridge – PA 062794
2005 Market Street, Suite 1000
One Commerce Square
Philadelphia, PA  19103
215-640-8500

-and-

Anthony U. Battista (admitted *pro hac vice*)
CONDON & FORSYTH LLP
7 Times Square
New York, NY  10036
(212) 490-9100

*Attorneys for Defendant*
*British Airways PLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing has been served upon counsel of record this 12th day of July, 2017 by electronic mail, as follows:

Daniel E. Brannen Jr. dbrannen@brannenlawllc.com
Brannen Law LLC
3 Caliente Road, #5
Santa Fe NM 87508

*Attorneys for Plaintiff*

Joseph Grasso jgrosso@wiggin.com
Richard Gallucci, Jr. rgallucci@wiggin.com
Jacob A. Sand jsand@wiggin.com
Wiggin and Dana LLP
50 S. 16th Street, Suite 2925
Philadelphia, PA 19102

*Attorneys for Viking River Cruises Inc.*

　　　　　　　　　　　　　　　/s/ Lisa Carney Eldridge
　　　　　　　　　　　　　　　LISA CARNEY ELDRIDGE

215990956