I<small>N THE</small> U<small>NITED</small> S<small>TATES</small> D<small>ISTRICT</small> C<small>OURT</small>
F<small>OR THE</small> M<small>IDDLE</small> D<small>ISTRICT OF</small> P<small>ENNSYLVANIA</small>

_____

|  |  |
|---|---|
| Daniel E. Brannen, | ) |
|  | ) |
| Plaintiff, | ) Civil Action |
|  | ) |
| v. | ) Docket No. 4:17-cv-00714 |
|  | ) |
| British Airways Plc and Viking River Cruises Inc., | ) Hon. Judge Yvette Kane |
|  | ) |
| Defendants. | ) Electronically Filed |
|  | ) |

_____)

**Plaintiff's Memorandum of Law in Opposition to Defendant Viking River Cruises Inc.'s Motion to Dismiss the Complaint**

Plaintiff Daniel E. Brannen seeks to recover for substantial injuries he suffered in the course of international air travel. *See* Complaint [ECF Doc. No. 1]. He states claims against Defendants British Airways Plc and Viking River Cruises Inc. for strict liability under Article 17 of the Montreal Convention. *See id.*, ¶¶ 50–58. Viking has filed a motion to dismiss, under Federal Rule of Civil Procedure 12(b)(6). *See* Defendant Viking River Cruises Inc.'s Motion to Dismiss [ECF Doc. No. 22].

Viking has four grounds for its motion. The first three are that Mr. Brannen's Complaint fails to allege facts sufficient to claim that Viking is a "contracting carrier" subject to liability under the Convention; that Mr. Brannen was injured in an

1

"accident" covered by the Convention; or that Mr. Brannen was injured in the course of any of the operations of embarking. But accepting the factual allegations of the Complaint as true, as the Court must on this motion, it is clear Mr. Brannen can prove facts sufficient for a jury to find in his favor on these three elements of his claim.

Viking's fourth ground is that the Court should dismiss the Complaint under the doctrine of *forum non conveniens* by enforcing a forum selection clause in a contract between Mr. Brannen and Viking. But the Montreal Convention nullifies the forum selection clause. And aside from the forum selection clause, Viking makes no argument that the current forum qualifies for transfer of venue under *forum non conveniens*. And even if Viking had done so, transfer, not dismissal, is the proper remedial action under *forum non conveniens*. Yet Viking has not requested transfer anywhere. Respectfully, the Court should deny Viking's motion to dismiss.

**Statement of the Facts**

On November 1, 2015, Mr. Brannen and his wife Claire were air passengers at London Heathrow Airport, in the middle of international air travel from Newark, New Jersey, to Marseille, France. *See* Complaint, ¶¶ 19–20. Viking, as a principal and not as an agent, arranged the international air travel for Mr. Brannen on British Airways. *See* Complaint, ¶¶ 12, 19. British Airways was the actual carrier for Mr. Brannen's arrival at Heathrow, and was a contracting carrier for his connections to Marseille. *See id.*, ¶¶ 20–22.

When the Brannens arrived at Heathrow, they "immediately" sought to take the necessary steps to board their connecting flight. *See id.*, ¶¶ 20–21. Their original connecting flight on British Airways was canceled. So after booking them on connecting flights on Brussels Airlines, a British Airways agent "gave Mr. and Mrs. Brannen an e-ticket receipt for flights 2096 and 3603, and specifically instructed Mr. and Mrs. Brannen immediately to travel from terminal 3 to terminal 4, using the airport's inter-terminal transfer bus system, to get their boarding passes and embark on Brussels Airlines, SN flight 2096." *See id.*, ¶ 22. Mr. and Mrs. Brannen did so, in compliance with the agent's instructions, "for the immediate purpose of embarking on" their connecting flight. *See id.*, ¶ 23.

"At the transfer bus stop at terminal 3, the bus stopped too far from the curb. Passengers began boarding by stepping directly from the curb onto the bus, which required a long step. Plaintiff estimates that the bus was approximately 20-22 inches from the curb." *See id.*, ¶ 24. "Mr. Brannen is an elderly man with arthritis in his right foot. The condition makes it useful for Mr. Brannen to walk with a cane, especially when traveling in locations with which he is unfamiliar. Mr. Brannen was using his cane when he tried to board the bus that day." *See id.*, ¶ 26. "Because the bus stopped too far from the curb, Mr. Brannen stepped forward with his good, left foot, but the foot slipped off the bus as he tried to board, causing him to hit his left shin on the bus ledge, which then caused him to fall backward." *See id.*, ¶ 27. His damages include

medical expenses of $22,768.97, lost wages of $5,510.00, minor but permanent disfigurement, and considerable pain and suffering. *See id.*, ¶¶ 38–40.

**Procedural History**

Mr. Brannen filed his Complaint on April 21, 2017, within the Montreal Convention's two-year statute of limitations. He then served both Defendants with the Complaint on May 3, 2017, within the time required by the Federal Rules of Civil Procedure. On June 15, 2017, Viking filed the instant motion to dismiss the Complaint. By stipulation, Mr. Brannen and Viking agreed that Mr. Brannen's response is due today, July 13, 2017. [ECF Doc. No. 29]

**Statement of the Question and Legal Standard**

There are two main questions. The first is whether the Complaint plausibly gives rise to a claim under which a jury might find that Viking was a "contracting carrier" for Mr. Brannen's international air travel; that Mr. Brannen suffered an "accident" covered by the Montreal Convention; and that Mr. Brannen was in the course of any of the operations of embarking at the time of the accident. In answering this question on a motion under Rule 12(b)(6), the Court must accept the Complaint's well-pleaded factual allegations as true. And if those facts plausibly give rise to the claim stated, the Court must dismiss the motion. *Santiago v. Warminster Twp.*, 629 F.3d 121 (3rd Cir. 2010).

The second question is a pure matter of law, whether the Montreal Convention nullifies the forum selection clause in the contract between Mr. Brannen and Viking,

thus requiring denial of the *forum non conveniens* portion of Viking's motion. *Avalon Technologies, Inc. v. Emo-Trans, Inc.*, No. 14-14731, 2015 WL 1952287 (E.D. Mich, Apr. 29, 2015).

**Argument**

Article 17 of the Montreal Convention imposes strict liability on carriers for passenger injuries that occur in the course of international air travel. To recover under Article 17, a passenger must prove only that he suffered (1) bodily injury in (2) an accident that occurred (3) on board the aircraft or in the course of any of the operations of embarking or disembarking. *See* Montreal Convention, Article 17(1). A travel agent or other party can be liable as a "contracting carrier" under the following provision: "The provisions of this Chapter apply when a person (hereinafter referred to as 'the contracting carrier') as a principal makes a contract of carriage governed by this Convention with a passenger … and another person (hereinafter referred to as 'the actual carrier') performs, by virtue of authority from the contracting carrier, the whole or part of the carriage." *See id.*, Article 39. Viking argues that Mr. Brannen cannot prove facts to satisfy the "contracting carrier," "accident," or "embarking" elements of his claim.

The current Montreal Convention, which replaced the earlier Warsaw Convention that was designed to insulate carriers from liability, now favors recovery for injured plaintiffs. *See Adelson v. American Airlines*, No. C 17-00548 WHA, 2017 WL 2265459, *2 (N.D. Cal. May 24, 2017) ("Whereas the primary aim of the contracting

5

parties to the [Warsaw] Convention was to limit the liability of air carriers…commentators have described the Montreal Convention as a treaty that favors passengers rather than airlines"), *citation omitted*. On a motion to dismiss under Rule 12(b)(6), the Court's role is to decide, not whether Plaintiff has proven the disputed elements of his claim, but whether a jury might find in his favor on them. *See, e.g., Walsh v. Koninklijke Luchtvaart Maatschappij*, No. 09-civ-01803 (RKE), 2011 WL 4344158, *3 (S.D.N.Y. Sep. 12, 2011). Clearly here the jury may.

### I. Viking is a contracting carrier because it acted as a principal to make Mr. Brannen's contract of carriage for air travel to Marseille

Viking's first argument is that it is not a contracting carrier under the Montreal Convention. To prove this element of his claim, Mr. Brannen must convince the jury that Viking: (1) is a person that made a contract of carriage governed by the Montreal Convention; (2) as a principal; (3) with a passenger; and (4) that another person performed the carriage by virtue of authority from Viking. *See In re West Caribbean Airways, S.A.*, 619 F.Supp.2d 1299 (S.D.Fla. 2007).

Mr. Brannen's Complaint contains more than enough on this element to survive a motion to dismiss. "Viking is a contracting carrier which, as a principal, makes contracts of carriage governed by the Montreal Convention with passengers or consignors or with persons acting on behalf of passengers or consignors." *See* Complaint, ¶ 11. And, "Viking arranged for air travel by Mr. and Mrs. Brannen from Newark, New Jersey, United States of America, to Marseilles, France, on British

Airways flight 188 departing from EWR 31 October 2015 to LHR, arriving 1 November 2015, connecting on British Airways flight 368 from LHR to MRS, arriving 1 November 2015." See id., ¶ 19. These two paragraphs contain allegations covering all four of the criteria under the "contracting carrier" element of Mr. Brannen's claim. Especially when, according to the Convention itself, the actual carrier's authority from the contracting carrier, "shall be presumed in the absence of proof to the contrary." *See* Montreal Convention, Article 39.

Viking cites *Best v. BWIA West Indies Airways*, 581 F.Supp.2d 359 (E.D.N.Y. 2008) to suggest that Article 39 contracting carriers must have code sharing arrangements, where one carrier offers service using an aircraft and crew leased from another. This simply is not so. In *Pierre-Louis v. Newvac Corp.*, 584 F.3d 1052 (2009), which Viking also cites, the Eleventh Circuit affirmed the district court's imposition of liability on a travel agency, Newvac, that contracted for seating capacity from an actual carrier, then resold that seating capacity to a different travel agency, which sold particular seats to the actual passengers. Newvac was not the actual carrier, and had no direct contact with the passengers, but the courts found Newvac was a contracting carrier under the Montreal Convention. See *In re West Caribbean Airways, S.A.*, 619 F.Supp.2d at 1302–08. In the case at bar, Mr. Brannen alleges that Viking contracted directly with him to provide air transportation to get Mr. Brannen to his Viking cruise, and then turned around and booked that air travel with British Airways. And as another case cited by Viking says, a party involved in the "ticketing" for the passenger

7

can be a contracting carrier. *Maranga v. Abdulmutallab*, 903 F.Supp.2d 270, 273 (S.D.N.Y. 2012).

Although this is a motion to dismiss, Viking relies on matter outside the Complaint for its motion, namely a contract of carriage between Mr. Brannen and Viking. *See* Exhibit A to ECF Doc. No. 22. The contract, however, bolsters Mr. Brannen's claim. It contains many provisions under which a jury can find that Viking, as a principal, contracted to provide Mr. Brannen's international air transportation:

> "Air seats are limited; airfares are subject to change and are not guaranteed until full payment of air is received" *Id.* at ¶ 4 under "Deposit Policy." This means that Viking guarantees airfare upon its receipt of full payment, even if it has not yet booked anything for the passenger.
>
> "For all air-inclusive packages cancelled after issuance of an airline ticket, the air portion of the refund, if any, will be processed only after the return of the original airline ticket." *Id.* at ¶ 6 under "Cancellation Policy." This means that Viking, as a principal, handles all ticketing cancellation and refunds, instead of referring passengers to the airlines for such tasks.
>
> "Viking reserves the right to withdraw and/or cancel a cruise or to make changes in the itinerary involving *any travel services* and accommodations whenever, in its sole judgment, conditions warrant." *Id.* at ¶ 11 under "Cancellation by Viking" (emphasis added). This means that Viking, not the airlines for which it claims to be an agent, retains full authority to change air travel plans Viking makes under its contract with its passenger.
>
> "Viking reserves the right to choose the air carrier, routing and city airport from each gateway city." *Id.* at ¶ 12 under "Services Provided by Airlines." This means that Viking was acting first and foremost as a principal, not only taking responsibility for the air accommodations, but reserving the very right to do so.
>
> "Viking cannot confirm airline seating assignments, add frequent flyer numbers to airline records or request special meals; these services should be arranged by a guest's travel agent or directly with the airline." *Id.* at ¶ 12 under "Services

Provided by Airlines." This is evidence that Viking was not an agent for British Airways.

So far from being an agent for the airlines, as it claims, Viking took primary responsibility as a principal for the things it chose to handle: selecting the air carrier and routing, guaranteeing airfare, handling air refunds, and mandating all changes to air travel. On this record, a jury could find that Viking was a contracting carrier. And such a carrier cannot disclaim strict liability under the Convention merely by inserting into the contract of carriage unnegotiated boilerplate that it is not a carrier and not responsible for injuries caused by third parties. "Any contractual provision tending to relieve the contracting carrier or the actual carrier of liability … shall be null and void." *See* Montreal Convention, Article 47.

### II. Mr. Brannen's injury was caused by an accident, namely the inter-terminal bus's negligent failure to stop close enough to the curb to enable safe boarding

Viking argues that Mr. Brannen's injury was not caused by an "accident." To prove that it was, Mr. Brannen need only show that his injury was caused by "a fortuitous, unexpected, unusual, or unintended event." *Air France v. Saks*, 470 U.S. 392, 400 (1985). "In cases where there is contradictory evidence, it is for the trier of fact to decide whether an 'accident' as here defined caused the passenger's injury." *Id.* at 405. Mr. Brannen easily satisfies this by alleging that an event external to himself, namely the inter-terminal bus's negligent failure to stop close enough to the curb, caused him to slip and fall. *See* Complaint, ¶¶ 24–27.

Viking argues that Mr. Brannen's frailty was the sole cause of his injury. This is unavailing. "Any injury is the product of a chain of causes, and we require only that the passenger be able to prove that some link in the chain was an unusual or unexpected event external to the passenger." *Air France v. Saks*, 470 U.S. at 406. Here the bus's negligence was an event in the chain external to Mr. Brannen. This is unlike *Air France*, where the plaintiff alleged a hearing injury from the aircraft's pressurization system, but all evidence showed that the system "operated in the usual manner," without any negligence. *Id.* at 395.

Viking also argues that the injury occurred during routine travel procedures. But "routine travel procedures" alone is not an exculpating criterion under *Air France*. It is merely another way of saying, there must be an unusual or unexpected event. So for example, in *Plonka v. U.S. Airways*, No. 13-7560, 2015 WL 6467917 (E.D. Pa., Oct. 27, 2015), which Viking cites, plaintiff injured his leg when it struck a properly installed entertainment box during takeoff. This was routine because there was no unusual or unexpected event. Similarly, in *Farra v. American Airlines*, No. Civ. A. 00-67, 2000 WL 862830 (E.D. Pa., June 28, 2000), plaintiff was injured by a proper meal served at the proper time during flight. This was routine because the airline told plaintiff, in advance, that it would not serve him a meal early to accommodate his preexisting illness. So service of the meal at the usual time was not unusual.

*Gezzi v. British Airways*, 991 F.2d 603 (9th Cir. 1993) is more applicable here. There, plaintiff was disembarking at Heathrow when he was instructed to use a

staircase. There was water on the staircase that caused plaintiff to fall and slide to the bottom. The court held that the water was an actionable accident, as it was an unexpected or unusual event external to plaintiff that caused injury. *Id.* at 604–05. The same applies here to the bus system's negligence. *See also McCarthy v. American Airlines*, No. 07-61016-CIV, 2008 WL 2704515 (S.D. Fla., June 27, 2008) (where airline agent instructed plaintiff to exit plane to check luggage plane-side, and agent then touched plaintiff, and plaintiff fell from plane, there was an actionable accident.)

### III. The accident that injured Mr. Brannen occurred in the operations of embarking on the connecting flight of his international air travel

Viking argues that Mr. Brannen's accident did not occur in any of the operations of embarking. This was the sole basis for British Airways' pending motion to dismiss under Rule 12(b)(6). *See* ECF Doc. No. 7. Mr. Brannen opposes Viking's motion on the same grounds by which he opposed British Airways' motion, and incorporates his earlier opposition brief here for that purpose. *See* ECF Doc. No. 27.

On this issue, Viking cites one case not relied upon by British Airways, namely *Brown v. U.S. Airways, Inc.*, No. CIV. A. 97-CV-7238, 1998 WL 634901 (E.D. Pa., Sep. 16, 1998). In *Brown*, plaintiff was injured while using a shuttle cart to get from one concourse to another. The court found that the control portion of *Evangelinos* was not satisfied because, "Plaintiffs were not obliged in any way to use the courtesy shuttle service U.S. Airways provided." *Id.*, * 1. In contrast here, Mr. Brannen's Complaint asserts that he was injured while using the only method British Airways instructed him

11

to use to get to his connecting flight. Mr. Brannen was obliged to use the inter-terminal bus system, and was not given options from which to choose. *See* ECF Doc. No. 27, "Plaintiff's Memorandum of Law in Opposition to Defendant British Airways Plc's Motion to Dismiss the Complaint," pp. 8–11.

### IV. The Montreal Convention nullifies the forum selection clause in the contract between Mr. Brannen and Viking

Finally, Viking asks the Court to dismiss the Complaint under the doctrine of *forum non conveniens,* because a forum selection clause supposedly requires Mr. Brannen to file his case in California. The motion is not well-founded, for three reasons.

First, Convention Article 33 on "Jurisdiction" gives the *plaintiff* the option to choose from among various jurisdictions in various State Parties, and neither Defendant has asserted that the Middle District of Pennsylvania is not one of them. *See* Convention, Article 33. Then, Convention Article 49 on "Mandatory Application" says, "Any clause contained in the contract of carriage … by which the parties purport to infringe the rules laid down by this Convention … by altering the rules as to jurisdiction, shall be null and void." *See id.*, Article 49. In *Avalon Technologies, Inc. v. Emo-Trans, Inc.*, No. 14-14731, 2015 WL 1952287 (E.D. Mich, Apr. 29, 2015), the court held that a forum selection clause that narrowed the plaintiff's various mandatory options under Article 33 was null and void under Article 49. This was so even though the defendant, like Viking here, merely sought to impose another venue in the United States, and not a court in a different State Party.

Second, the doctrine of *forum non conveniens* requires the movant to carry the three-prong burden of (1) overcoming the considerable deference accorded a domestic plaintiff's choice; (2) showing that there is an adequate alternative forum, and (3) showing that the balance of the private and public interest factors favors transfer. *See, e.g., In re Air Crash Over the Mid-Atlantic on June 1, 2009*, 760 F.Supp.2d 832 (N.D. Cal. 2010). Viking fails entirely either to cite this test, or to set forth an argument under it. Mr. Brannen is not required to oppose an argument that Viking has not made. Viking rested its *forum non conveniens* motion entirely on the forum selection clause. Because that clause is null and void, the motion fails.

Third and finally, Viking's motion actually conflates two separate lines of cases in an effort to achieve dismissal on the strength of the forum selection clause. It cites Montreal Convention cases that involved *forum non conveniens*, but that did *not* involve a forum selection clause. *See, e.g., In re Air Crash Over the Mid-Atlantic on June 1, 2009*, 760 F.Supp.2d 832 (N.D. Cal. 2010); *Khan v. Delta Airlines*, No. 10 Civ.2080(BMC), 2010 WL 3210717 (E.D.N.Y. Aug. 12, 2010). Then it cites non-Montreal Convention cases that involved forum selection clauses, but that did not involve the Convention's Jurisdiction and Mandatory Application provisions. *See, e.g., Atlantic Marine Construction Co., Inc. v. U.S. Dist. Court*, 134 S.Ct. 568 (2013); *M/S Bremen v. Zapata Off-Shore Co.*, 92 S.Ct. 1907 (1972). The latter line of cases clearly dictates that transfer, not dismissal, is the appropriate remedy for enforcing a forum selection clause. *See Atlantic Marine*, 134 S.Ct. at 575.

Viking cannot have it both ways. If its motion is based on the forum selection clause, the Court must deny it because the clause is null and void under the Convention. And if the clause is not null and void, transfer is the appropriate remedy, yet Viking has not requested transfer. If, instead, Viking's motion is based on *forum non conveniens*, it has failed to carry its three-prong burden by not even citing the applicable test, let alone arguing it. Viking's motion should be denied.

**Conclusion**

For the foregoing reasons, the Court should deny Viking's motion to dismiss.

                                      Respectfully submitted:

                                      __/s/_____
Daniel E. Brannen Jr., PA 83717
Brannen Law LLC
3 Caliente Road, #5
Santa Fe NM 87508
505.466.3830
dbrannen@brannenlawllc.com

Attorney for Plaintiff, Daniel E. Brannen

## Certificate of Service

The undersigned hereby certifies that a true and correct copy of the foregoing **Plaintiff's Memorandum of Law in Opposition to Defendant Viking River Cruises Inc.'s Motion to Dismiss the Complaint** has been served upon counsel of record this 13th day of July 2017 by electronic mail, as follows:

> Erin C. Galbally
> Lisa Carney Eldridge
> Clark Hill, PLC
> 2005 Market Street, Suite 1000
> One Commerce Square
> Philadelphia, PA 19103
> egalbelly@clarkhill.com
> leldridge@clarkhill.com
>
> Anthony U. Battista
> CONDON & FORSYTH LLP
> 7 Times Square
> New York, New York  10036
> abattista@condonlaw.com
> Attorneys for British Airways Plc
>
> Richard D. Gallucci Jr.
> Joseph G. Grasso
> Jacob A. Sand
> Wiggin and Dana LLP
> Two Liberty Place
> 50 S 16th Street, Suite 2925
> Philadelphia PA 19102
> rgallucci@wiggin.com
> jgrasso@wiggin.com
> jsand@wiggin.com
> Attorneys for Viking River Cruises Inc.
>             /s/
>         Daniel E. Brannen Jr.

1