IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL E. BRANNEN, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | No.: 4:17-cv-00714 |
| | : | |
| v. | : | Honorable Judge Yvette Kane |
| | : | |
| BRITISH AIRWAYS PLC AND | : | **ELECTRONICALLY FILED** |
| VIKING RIVER CRUISES INC., | : | |
| | : | |
| Defendants. | : | |

**DEFENDANT VIKING RIVER CRUISES INC.'S
REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

Defendant Viking River Cruises Inc. ("VRC") respectfully submits this Reply in further support of its Motion to Dismiss the Complaint for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and to enforce the valid forum selection provision in the Binding Contract specifying the Courts of Los Angeles County, California, as the exclusive chosen forum.

**INTRODUCTION**

Plaintiff has alleged that on September 24, 2014, he "made reservations with Viking for 'Viking Portraits of Southern France'" cruise (Complaint at ¶ 18), and that VRC "arranged for air travel" aboard British Airways flights traveling from Newark, New Jersey, to Marseilles, France, with a connection at London – Heathrow ("LHR"), departing on October 31, 2015. *Id.* at ¶ 19. After landing at LHR, Plaintiff and his wife were informed by a British Airways agent that their connecting flight to Marseilles had been cancelled. *Id.* at ¶¶ 20-21. A British Airways agent re-booked the Plaintiff and his wife onto a Brussels Airlines flight to Brussels, Belgium,

1

with a connecting flight to Marseilles. *Id* at ¶ 21. Plaintiff and his wife were allegedly instructed by the British Airways agent to take the inter-terminal shuttle bus to transit to the departure gate for their new connecting flight. *Id* at ¶ 22.

Plaintiff and his wife left the terminal and waited for the inter-terminal bus; when it arrived, the bus allegedly stopped approximately 20-22 inches from the curb. *Id.* at ¶¶ 23-24. Several other passengers boarded the bus, including Plaintiff's wife, without difficulty. *Id.* at ¶ 25. Plaintiff, who suffers from arthritis, and was using a cane to walk at the time, attempted to step on the bus with his "good, left foot," but his foot slipped off the bus, "causing him to hit his left shin on the bus ledge, which then caused him to fall backward." *Id.* at ¶¶ 26-27.

Plaintiff's Complaint fails to allege sufficient facts to show that (1) VRC was acting as an air carrier, and was, therefore, subject to the Montreal Convention; (2) that the injury giving rise to his claims occurred on board or during the operations of embarking or disembarking an international flight, as required by Article 17 of the Montreal Convention; or (3) that his injury was the result of an "accident" as required to state a claim for relief under Article 17 of the Montreal Convention. Additionally, Plaintiff's commencement of this action in this District is contrary to the agreed to exclusive forum selection provision in VRC's "Binding Contract."

### VRC is not a Carrier Subject to the Montreal Convention

The Montreal Convention governs an international air carrier's liability for a passenger's injuries or other loss that occur during international flight. *Schaefer–Condulmari v. U.S. Airways Grp., Inc.*, No. Civ.A.09–1146, 2009 WL 4729882, at *4 (E.D. Pa. Dec. 8, 2009) (citing *Sompo Japan Ins. Co. v. Nippon Cargo Airlines Co.*, Ltd., 522 F.3d 776, 779–781 (7th Cir. 2008)). A claim under the Montreal Convention for such a loss may only be brought against an

actual carrier, a carrier that "actually transports passengers or baggage, or a contracting carrier that "makes a contract of carriage governed by th[e] Convention…and another person … performs, by virtue of authority from the contracting carrier the whole or part of the carriage." *Orova v. Nw. Airlines Inc.*, No. 03-4296, 2005 WL 281197, at *3 (E.D. Pa. Feb. 2, 2005) (quoting *Kapar v. Kuwait Airways Corp.*, 845 F.2d 1100, 1103 (D.C. Cir. 1988)); Montreal Convention Art. 39. Plaintiff's Complaint does not allege sufficient facts to support his claim that VRC is a contracting carrier subject to the terms of the Montreal Convention.

In Plaintiff's Opposition to VRC's Motion to Dismiss, Plaintiff claims that two paragraphs in his Complaint, which state, in relevant part, "Viking is a contracting carrier, which, as a principal makes contracts of carriage governed by the Montreal Convention with passengers…Viking arranged for air travel by Mr. and Mrs. Brannen," aver sufficient facts to meet his burden; but this is simply not the case. *See*, Plaintiff's Memorandum of Law in Opposition (Plaintiff's "Opposition") (ECF #32) at 6. These two paragraphs are "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," and as such, they are not entitled to the presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, even these conclusory statements were true, they do not satisfy Plaintiff's burden to adequately plead the elements of his claims.

Plaintiff has not alleged any specific conduct undertaken by VRC while arranging air travel for Plaintiff. Indeed, Plaintiff has not alleged the presence of a contract for air carriage between him and VRC. Likewise, Plaintiff has not alleged that British Airways performed the contracted for air carriage by virtue of any delegation of the responsibilities in any contract for carriage between Plaintiff and VRC. Even when considering the conclusory statements in the

Complaint that VRC "is a contracting carrier," Plaintiff has not alleged any facts that support a finding that VRC was acting as a contracting carrier in this instance. In Plaintiff's Opposition, he claims that VRC "contracted directly with [Plaintiff] to provide air transportation;" however, this allegation also has no support in the Complaint.

Unlike in *Newvac*, Plaintiff has not alleged any facts to suggest that VRC "knowingly assumed the responsibility to supply the aircraft and crew, and to otherwise conduct itself as a carrier, for the transportation of [passengers]." *Pierre-Louis v. Newvac Corp.*, 584 F.3d 1052, n.6 (11th Cir. 2009). Likewise, Plaintiff has not alleged that VRC had any "involvement in the operation or ticketing" of any British Airways flight. *Maranga v. Abdulmutallab*, 903 F. Supp. 2d 270, 273 (S.D.N.Y. 2012). Plaintiff has therefore failed to offer any factual support for his claims that VRC is a contracting carrier or that VRC was acting as a contracting carrier when it "arranged" for travel.

Even if one were to attempt to fill the gaps in the Complaint through speculation, it is clear that VRC simply arranged for air travel on British Airways and that, accordingly, VRC merely facilitated the execution of a contract for air carriage between Plaintiff and British Airways. The Complaint, therefore, fails to adequately plead an essential element of Plaintiff's claim that VRC was acting as a contracting carrier subject to the Montreal Convention, and it should be dismissed.

### Plaintiff's Injuries did not Occur During the Operations of Embarking, Disembarking or On-Board an International Flight

In order to reduce duplicative briefing, VRC adopts and relies upon the legal arguments set forth in the Reply in Further Support of British Airways PLC's Motion to Dismiss filed by co-defendant, British Airways, in this matter.

### Plaintiff's Injuries were not the Result of an "Accident"

Plaintiff has failed to allege that his injuries were the result of an "accident" and, as such, the Complaint should be dismissed. For a complaint to state a claim under Article 17 of the Montreal Convention, the passenger's injury must be the result of an "accident." *See Plonka v. U.S. Airways*, No. 13-v-7560, 2015 WL 6467917 at *2 (E.D. Pa. Oct. 27, 2015). The term "accident" as used in the Montreal Convention is defined as "an unexpected or unusual event or happening that is external to the passenger." *Air France v. Saks*, 470 U.S. 392, 405, (1985). Plaintiff has not alleged that any external force, obstacle or hazard caused him to fall. While Plaintiff claims in his Opposition that the 20-22 inch distance between the bus and the curb caused him to slip, the Complaint makes clear that other passengers were able to board the bus, and that the distance from the curb could be traversed in a "long step," and Plaintiff therefore fails to present any causative link between the long step and Plaintiff's fall. Indeed, the only explanation for Plaintiff's fall offered in the Complaint is his own internal condition. As such, Plaintiff has not pled that an accident caused his injuries, and therefore his Complaint should be dismissed.

In his Opposition, Plaintiff attempts to analogize his injuries to those sustained by the plaintiffs in *Gezzi v. British Airways PLC*, 991 F.2d 603, 604 (9th Cir. 1993) and *McCarthy v. Am. Airlines, Inc.*, No. 07-61016-CIV, 2008 WL 2704515, at *5 (S.D. Fla. June 27, 2008). However, the facts alleged in the Complaint have little in common with the facts of these two cases.

In *McCarthy* the Plaintiff was touched by a flight attendant which caused him to lose his balance and fall through an unsecured handrail. *McCarthy* at *5. Plaintiff has not alleged that any external force acting on him caused him to lose his balance. In *Gezzi*, the Plaintiff slipped in

a pool of water that had gathered on a stairway. *Gezzi* at 604-605. The court held that the presence of water on a stairway used to descend to the tarmac constituted an "unexpected or unusual event external to Plaintiff." *Id.* at 605. Here Plaintiff has not alleged that there were any obstacles or hazards which caused him to slip. Plaintiff has not pled any facts to support a finding that the 20-22 inch distance from the curb to the bus was unusual or unexpected. Plaintiff has not presented any evidence that would suggest that the inter-terminal bus would usually stop closer to or further from the curb. Moreover, Plaintiff has not alleged that there was anything preventing Plaintiff from assessing the distance from the curb to the bus or that this distance was somehow "unexpected." Finally, a long step from a curb to a bus is the type of "routine travel procedure" that the Supreme Court has excluded from the definition of the term "accident." *Air France v. Saks*, 470 U.S. 392, 405, (1985).

While Plaintiff asserts in his Opposition that "the bus's negligent failure to stop close enough to the curb, caused him to slip and fall," the Complaint leaves the cause of Plaintiff's fall to complete speculation. Indeed, the description of Plaintiff's alleged fall in the Complaint leaves the Court to, at best, speculate as to the cause of the fall. "Because the bus stopped too far from the curb, Mr. Brannen stepped forward with his good, left foot, but the foot slipped off the bus as he tried to board, causing him to hit his left shin on the bus ledge, which caused him to fall." *Complaint* at ¶27. The Complaint simply offers no explanation as to what may have caused Plaintiff's foot to slip, and does not allege that any event occurred while Plaintiff was trying to take this "long step" onto the bus. Moreover, the Complaint does not allege that this "long step" was even necessary to board the bus. The Complaint alleges that "Passengers began boarding by stepping directly from the curb onto the bus, which required a long step." *Id.* at ¶24.

Nothing in the Complaint suggests that the Plaintiff, or any other passenger, could not have avoided taking this long step by simply choosing to step from the curb to the road, approaching the bus and then stepping onto the bus from this closer distance.

The facts of this case are more akin to those of *Ugaz v. Am. Airlines, Inc.*, 576 F. Supp. 2d 1354, 1366 (S.D. Fla. 2008). In *Ugaz* the Plaintiff brought a claim under the Montreal Convention after falling while attempting to climb an inoperable escalator. *Id.* at 1359. The court held that there was no accident, as "there were no foreign substances on the stairs, jostling passengers or other direct outside influence that caused the Plaintiff's fall apart from her own decision to climb an acknowledged inoperable escalator." *Id.* at 1366. Plaintiff has not alleged any foreign substance, jostling passengers or any other direct outside influence that caused his fall, apart from his decision to attempt the long step from the curb directly onto the bus. The sole explanation is his internal condition which left him unable to traverse the step to the bus like the other passengers. Plaintiff has therefore failed to sufficiently allege that an accident occurred, and his Complaint should therefore be dismissed.

### The Complaint Should be Dismissed based on the Forum Selection Clause Contained in the Passenger Ticket Contract

Plaintiff has filed this action in an improper venue and, therefore, the case should be dismissed.[1] The VRC Binding Contract corresponding to Plaintiff's reservations includes a forum selection provision specifying "any court of competent jurisdiction located in Los Angeles County, California" as the *exclusive* forum for any action relating to the Contract, and that any such dispute would be governed by the "laws of the State of California." Plaintiff argues that the Montreal Convention's "Mandatory Application" provision should preclude application of the

---

[1] VRC moves for dismissal based on the Plaintiff's selection of an improper venue contrary to the exclusive forum selection clause in the binding contact, and not pursuant to *forum non conveniens*.

7

forum selection clause in the binding contract. Opposition at 12-14. As an initial matter, for the reasons set forth above, and in VRC's Motion to Dismiss, VRC is not a carrier subject to the Montreal Convention. Moreover, the application of this forum selection provision would not run afoul of the Article 49 of the Montreal Convention.

Article 33 of the Montreal Convention permits a plaintiff to bring an action for damages "in the territory of one of the States Party to the Convention before a court of the carrier's domicile or the carrier's principal place of business, the place where the contract was made, or the place of destination of the passenger." Montreal Convention Art. 33. The jurisdictional provisions of the Montreal Convention, just as those in the preceding Warsaw convention, apply to "national entities and not to geographical places within the nation." *Pitman v. Pan Am. World Airways, Inc.*, 223 F. Supp. 887, 889 (E.D. Pa. 1963). Where a plaintiff agrees to a forum selection clause, the plaintiff has effectively exercised the right to select a forum pre-emptively. *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 582, 187 L. Ed. 2d 487 (2013). The forum selection clause in the Binding Contract, therefore, does not represent an infringement of any of Plaintiff's rights, but instead was an exercise of such rights. In exercising these rights, Plaintiff selected any "court of competent jurisdiction located in Los Angeles County, California." Those courts are within the nation where VRC, the alleged contracting carrier, is domiciled, as would be permitted by Article 33 of the Montreal Convention. This preemptive exercise of Plaintiff's selection of forum is consistent with the

Montreal Convention and, therefore, does not "purport to infringe the rules laid down by [the Montreal Convention.]" Montreal Convention art. 49. As a result, the forum selection clause should be enforced and the Complaint should be dismissed.

Dated: July 26, 2017                                        Respectfully submitted,

Of Counsel:                                                 /s/Joseph G. Grasso
                                                            Joseph G. Grasso
Jacob A. Sand                                               Richard D. Gallucci, Jr.
Wiggin and Dana LLP                                         **WIGGIN AND DANA LLP**
Two Liberty Place                                           Two Liberty Place
50 S. 16th Street, Suite 2925                               50 S. 16th Street, Suite 2925
Philadelphia, PA  19102                                     Philadelphia, PA  19102
Tel.: 215.988-8310                                          Tel.: 215-988-8310
Fax: 215.988-8344                                           Fax: 215-988-8344
E-Mail:  jsand@wiggin.com                                   E-Mail:  jgrasso@wiggin.com;
                                                                     rgallucci@wiggin.com

26546/11/3724644.v3

# CERTIFICATE OF SERVICE

I, Joseph G. Grasso, certify that I have this day made available for reviewing and downloading from the ECF system the following document:

**Defendant Viking River Cruises Inc.'s
Reply in Further Support of its Motion to Dismiss the Complaint**

Dated: July 26, 2017

| | |
|---|---|
| Of Counsel: | /s/Joseph G. Grasso |
| | Joseph G. Grasso |
| Jacob A. Sand | Richard D. Gallucci, Jr. |
| Wiggin and Dana LLP | **WIGGIN AND DANA LLP** |
| Two Liberty Place | Two Liberty Place |
| 50 S. 16th Street, Suite 2925 | 50 S. 16th Street, Suite 2925 |
| Philadelphia, PA  19102 | Philadelphia, PA  19102 |
| Tel.: 215.988-8310 | Tel.: 215-988-8310 |
| Fax: 215.988-8344 | Fax: 215-988-8344 |
| E-Mail:  jsand@wiggin.com | E-Mail:  jgrasso@wiggin.com; rgallucci@wiggin.com |

26546/3726246.v1